## Case No. 17,851.

WILSON PACKING CO. et al. v. CLAPP.

[8 Biss. 545; 8 Reporter, 262; 4 Ban. & A. 355; 11 Chi. Leg. News, 353.] [1]

Circuit Court, N. D. Illinois.    June 19, 1879.[2]

PATENTS—CANNED BEEF—NOVELTY—FORM OF CAN.

1. The method of cutting up meat, preparing it with antiseptics, pressing, putting into cans, pressing afterwards, and then hermetically sealing the cans, is not patentable, for want of novelty.

2. A patent for cooked meat put up in a solid form, in its natural state, without disintegration or desiccation, in hermetically sealed packages, can not be sustained as a new article of commerce.

3. The pyramidal form of can, for packing food, is not patentable.

4. The Marshall and Wilson patents for canning beef not sustained.

[Cited in Wilson Packing Co. v. Chicago Packing & Provision Co., 9 Fed. 548.]

In equity.

Munday & Evarts, J. N. Jewett, and W. H. Clifford, for complainants.

Eldridge & Tourtellotte, for defendant.

Before DRUMMOND, Circuit Judge, and BLODGETT, District Judge.

DRUMMOND, Circuit Judge. The only question in this case necessary to be considered is, whether the two things which are the subject-matter of the patents are in themselves patentable, namely, the mode described in which meat is compressed, and put into cans, and the mode described of making the cans or vessels in which the meat is placed.

The first patent is that of W. C. Marshall, originally issued July 12, 1864, and re-issued May 25, 1875. It relates to the putting up and preserving of meats. Mr. Marshall's mode, as I understand, is this: He prepares the meat, it being cut in proper form, and in its raw state, by what are called antiseptics; that is, by the various methods of preserving meat with salt, saltpeter, etc., and when the meat is in this condition he subjects it to a strong pressure. It is then put, in the proper quantity, into a package, box or can, of the required size, and is there also subjected to pressure. Then, in the usual way, the air is expelled from the package by heat, and it is hermetically sealed.

This seems to be the whole process as described by Mr. Marshall, and in his claim he declares that it is for packing and preserving meat, in subjecting it, after it has been submitted to preserving processes, to a heavy pressure, and packing and hermetically sealing in packages, or boxes, compressed meat, as described.

The question is whether of itself, this was

a patentable subject, viz.: cutting up meat in its raw state, putting it into antiseptics, subjecting it to pressure, as in a mold, before and after it is put in the box or package, and then hermetically sealing it. It is admitted that the manner in which the package is hermetically sealed was well known. That is not claimed, but only the particular way in which the meat is prepared, put up and placed in the box or package.

The main difference as I understand, between the patent of Marshall and that of William J. Wilson, is that in the latter, which was originally issued on the 31st of March. 1874, and re-issued on the 6th of April, 1875, Wilson describes his meat as being first cooked thoroughly, at a temperature of 212° Fahrenheit, so that all the bone and gristle can be removed and the meat retain its natural grain and integrity. In both patents, it is claimed that the meat retains all its nutritious qualities, and that it is not desiccated, or dried, and in Wilson's patent, after it is thus cooked, it is compressed, as in Marshall's, in the box or package, and then it is hermetically sealed. These two modes of preserving meat appear to be somewhat different from any of those which have been presented to the court, in this, that the meat is not put up in brine or any other liquid, neither is it dry or desiccated, but it remains in such a form that it can be reduced to a compact mass, so as to retain most of the nutritious qualities of the meat. I take it for granted that it is impracticable to cook meat as Wilson proposes it should be cooked, (although nothing is said as to the manner in which it is to be cooked,) either by steam or water, or otherwise, without losing some of its nutritious qualities. but there may be a difference in the mode in which it is cooked; in some cases it may retain most of its nutriment, and in others only a comparatively small part. It is claimed both by Wilson and by Marshall, that it retains all the juices and nutritious qualities of the meat, the compression only removing the superfluous moisture. I doubt whether that is exactly true, but I presume it does retain most of the nutritious qualities of the meat.

Wilson claims "the process described for packing cooked meats for transportation, by compressing the same into an air-tight package, so as to preserve the meat in its integrity and retain all the natural juices and nutritious qualities of the meat, substantially as set forth;" and then he claims "as a new article of merchandise, cooked meat put up in a solid form in its natural state, without disintegration or desiccation, in hermetically sealed packages as set forth." It seems that there is an advantage in putting up meat in this way, which does not exist in other cases which have been brought to the attention of the court. The difficulty I have had, and still have, in the case is, whether this can be said to be of such a character as to entitle the parties to a patent.

---

[1] [Reported by Josiah H. Bissell, Esq., and by Hubert A. Banning. Esq., and Henry Arden, Esq., and here compiled and reprinted by permission. 8 Reporter, 262, contains only a partial report.]

[2] [Affirmed in 105 U. S. 566.]

The next point is as to the form of the can described in the patent of John A. Wilson, issued April 6, 1875; re-issued, Oct. 23, 1877. He claims an hermetically sealed can, used in packing meat or other articles, made in the shape of a pyramid, having rounded corners, and both ends slightly flaring to form shoulders, against which the head or end pieces rest. In other words, it is the shape of a can of cooked corned beef, put up by Libby, McNeill and Libby, and it is not material of what size it is made. "A.," he says, represents the body of the can made in the form of a truncated pyramid with rounded corners, and of any desired number of sides, although he prefers to make it of four sides; both ends of the body are made slightly flaring so as to form interior shoulders or offsets against which the heads "C." and "B." (top and bottom) rest. The edges of these heads are turned outward, as shown, and the flaring edge of the end of the can is turned over the flange, and the three thicknesses of metal pressed together by machinery, with or without solder, so as to make the joints air-tight. The meat is prepared, cut up, pressed and put in cans, pressed afterwards, and then the cans hermetically sealed. As I understand, the meat is put in at the large end. And then he claims the can for packing food, hermetically sealed, and constructed of pyramidal form and rounded corners, with offset ends to support the head, said head being secured as shown and described. He also claims, as an improved article of manufacture, solid meat, compressed as described, and within a pyramidal can, so that said can forms a mold for the meat, and permits its discharge in a solid cake substantially as specified.

It is conceded that there cannot be a patent for a mere form unless the form is of the essence of the invention. It is not easy to describe what constitutes the essence of the form so as to make it the subject of a patent, and distinguish it from that which is mere form. Sometimes, as the courts say, the form may be the substance of the invention, and there may be such a change produced in a certain article as to make it, (the article manufactured or otherwise, whatever it may be,) the subject of a patent. It seems that there are some advantages about the construction of the can which have made it come into common use. I have described the manner in which the meat is put up—that it becomes a compressed, compact mass, neither dry nor liquid; that it retains most of its nutritious qualities, and if freed from the pressure which surrounds it, it will retain its compact condition. The advantage of this can is, that when it is opened, as it usually is, at the bottom, and the bottom taken out, (the can having been previously cooled, so that the ice or the cool water may leave it in its least expansive condition,) and it is struck on the top, the meat falls out in a compact mass, and then can be eaten, or is

fit for the table. Both of these are advantages, and the advantages have been such as have caused it, as the testimony shows, to come into great use, such that it has made what is claimed to be a revolution in the trade of preserved meat. And the patent office seems inclined to issue patents for such things which it calls a new article of manufacture, both as to the manner in which the meat is put up, and as to the structure of the can. And it has issued patents for both of these as a new article of manufacture. But I must confess, on principle, I am not inclined to hold that these are the proper subject matter of a patent.

If we sustain a patent of this kind, I do not exactly see how we can do so without preventing everybody else from preparing and cooking meat, cutting it up and subjecting it to a pressure as these patentees describe. There seems nothing of invention in preparing and cutting up meat, or in putting it into a can, or in pressing it before or after it is put there, and there is certainly nothing new in hermetically sealing a can in the manner in which this is said to be sealed. There is nothing new in constructing a can of this particular form. It is a matter of fancy more or less. This can might be round or octagonal or in any other form, provided it was larger at the bottom than at the top—lessening gradually as it approached the top—and if the meat was in the same condition in which this was, and the can open at the bottom, the meat would fall out in the same way as from the plaintiff's can. If we sustain this patent, we prevent every one else from putting up meat in this form; that is, from cooking it, compressing it in the manner in which this is compressed, and putting it in cans, and hermetically sealing it. I do not feel like sustaining a patent, when such consequences are to follow.

And as to the plaintiff's can: There is nothing about this can, except the exercise, as I understand it, of mechanical skill. There is, certainly, nothing inventive in making it in this shape. I was at first inclined to think that there might be something in the peculiar form in which the can was put together, as in the rounded corners with both ends slightly flaring to form the shoulders, and the manner in which the end pieces are put on and secured, but I do not know that this is more than a mere mechanical device.

In stating my views about these patents, I may admit that there are some authorities which seem to sustain patents of this kind, and that seems to some extent to be the usage of the patent office; but my own view is, that this is wrong, and that patents of this kind ought not to be sustained.

The case of the can of lard, unreported, Tucker v. Fairbanks [Case No. 14,218], is somewhat similar. I have always doubted whether I ought to have sustained that claim. My desire about this case is, that it

should be arranged in such a way that the opinion of the supreme court can be taken on this question, whether or not these two things are patentable, namely: the manner in which the meat is prepared, compressed and placed in the can; and secondly, the manner in which the can is constructed.

It may be true that here is an article of merchandise which, in one sense, may be said to be new in the form in which it exists, and which, in consequence of its advantages, has come into common use.

It may be true that this is something like the caustic alkali case which has been so often referred to, but I must confess, personally, my strong opposition to the maintenance of patents of this kind as being against the rights of the public. For the court now to sustain these patents in this form is really giving them a complete monopoly of putting up compressed meats in this way, and in cans like these, and as the questions involved in this case are important, and as it may simplify matters, my brother judge and myself have concluded to certify the questions to the supreme court.

[On appeal to the supreme court, the decree of this court was affirmed. 105 U. S. 566, note.]

These patents were again brought before this court, at the December term, 1881, and decided invalid in the case of Wilson Packing Co. v. Chicago Packing & Provision Co. [9 Fed. 547]. See, also, Wilson Packing Co. v. Clapp [Case No. 17,-850].