WILSON PACKING Co. and another *v.* CHICAGO PACKING & PROVISION Co.

SAME *v.* ST. LOUIS BEEF CANNING Co.

SAME *v.* HUNTER and others.

*(Circuit Court, N. D. Illinois.  November 25, 1881.)*

1. LETTERS PATENT—COOKED MEATS.

Reissued letters patent No. 6,370, dated April 6, 1875, and issued to William J. Wilson, for a new and useful improvement in the process for preserving and packing cooked meats for transportation,—consisting in thoroughly cooking the meat by boiling it in water, removing the bone and gristle, then placing it, while yet warm with cooking, into a box or case and pressing it by some suitable apparatus with sufficient force to remove the air and all superfluous moisture, and make the meat form a solid cake, and, finally, closing the box or case air-tight upon the meat,—are void for want of novelty.

2. SAME—SAME.

Claim 1, of reissue No. 7,923, dated October 23, 1877, and issued to John A. Wilson, for an improvement in metallic cases for containing cooked meats, which is for a can for packing food hermetically sealed, and constructed of pyramidal form, with rounded corners and offset ends to support the heads; and claim 3, which is a claim as an improved article of manufacture, of solid meat compressed and secured within a pyramidal case or can so that said can forms a mould for the meat, and permits its discharge as a solid cake,—are also void for want of novelty.

3. SALES OF PRODUCT OF PATENTED PROCESS—EVIDENCE OF VALIDITY.

In all doubtful cases involving the validity of a patent, the fact that the article made by the use of the process described in the patent has been extensively sold is a consideration of great weight with the court, but it is not enough *per se* to sustain the patent.

*West & Bond* and *Munday, Evarts & Adcock*, for Wilson Packing Company.

*John N. Jewett* and *Offield & Towle*, for Libby, McNiell & Libby.

*William H. Clifford* and *B. F. Thurston*, for all complainants.

*Noble & Orrick, Coburn & Thatcher, E. N. Dickinson,* and *Eldridge & Tourtelotte*, for defendants.

Before DRUMMOND, C. J., and BLODGETT, D. J.

PER CURIAM.  The cases have all been argued together, and involve the same questions of law and fact, and are founded upon the reissued patent of William J. Wilson, No. 6,370, of April 6, 1875, for a new and useful improvement in the process for preserving and packing cooked meats for transportation, and in the reissued patent of John A. Wilson, No. 7,923, of October 23, 1877, for a new and useful improvement in metallic cans for containing cooked meat. The reissued patent of William C. Marshall, No. 6,451, of May 25,

1875, for a new and improved process for preserving meats, although set forth in the pleadings, is not relied on in the argument, and need not be further considered as an independant ground of relief. These patents were before us in 1879, in the case of *Wilson Packing Co.* v. *Pratt,* 11 Chi. Leg. News, 353.

The most important questions in the case grow out of the patent of William J. Wilson. In his original patent he stated that, in carrying out his invention, the meat was to be first cooked thoroughly, at a temperature of 212 deg. Fahrenheit, so that all the bone and gristle could be removed and the meat yet retain its natural grain and integrity; that a measured quantity of this cooked meat was then, while yet warm with cooking, pressed by any suitable apparatus into a previously prepared box or case, with sufficient force to remove the air and all superfluous moisture, and make the meat form a solid cake, and that then the box or case was closed air-tight upon the meat. It will be observed that he did not distinctly set forth in this original patent in what manner the meat was to be first cooked. There is in the reissue no change in the description of carrying out the invention, except he declares it is a "preferable" mode of putting the meat cooked into a box or case while yet warm with cooking. The implication, of course, is that it was not an indispensable part of his description of the invention that it should be thus put in warm. There were two claims in the original, as there are in the reissue, and the only difference between them is, that in the original, the first claim states that the cooked meat is to be pressed into an air-tight package "while heated with cooking," these last words being omitted in the first claim of the reissue. While these suits have been pending the plaintiffs have filed a disclaimer of the use of the word "preferably" of the reissue, thus eliminating it from the description therein contained, and leaving the patent in this respect as it was in its original form. They have also disclaimed the use of the following words of the description in the reissued patent: "The meat is first cooked thoroughly at a temperature of 212 deg. Fahrenheit, so that all the bone and gristle can be removed and the meat yet retain its natural grain and integrity;" and instead thereof insert the following words, viz.: "The meat is first cooked thoroughly by boiling it in water so that all the bone and gristle can be removed and the meat yet retain its natural grain and integrity."

Waiving the objections which have been made to the validity of these disclaimers, we may now state what the invention of the William J. Wilson patent is. The meat is to be first thoroughly cooked

by boiling it in water, so that all the bone and gristle can be removed and the meat yet retain its natural grain and integrity. While yet warm with cooking it must, by some suitable apparatus, be pressed into a box or case, previously prepared, with sufficient force to remove the air and all superfluous moisture, and make the meat form a solid cake. The box or case is then to be closed air-tight upon the meat. So that the invention contains these elements:

(1) Thoroughly cooking the meat by boiling it in water, removing the bone and gristle. (2) Placing it, while yet warm with cooking, into a box or case, and pressing it by some suitable apparatus with sufficient force to remove the air and all superfluous moisture, and make the meat form a solid cake. (3) Closing the box or case air-tight upon the meat.

It will thus be observed that the first requisite is that the meat must be thoroughly cooked by boiling it in water, that mode of cooking called "stewing" not being necessarily excluded, unless the words declaring that "the meat yet retain its natural grain and integrity" have that effect. The patent limits the cooking to this particular mode; baking, roasting, and steaming being excluded as modes of cooking meat. After the bone and gristle are removed there is no description given of any particular manner in which the meat is to be treated before it is put into the box or case, unless the use of the language that "it is then wholesome and palatable" has that effect.

And although the evidence shows that all the meat put up by the plaintiffs, and which has entered so extensively into the markets of the country for sale, is corned meat, that is not a part of the patent; and fresh meat, without antiseptics of any kind, if thoroughly cooked by boiling in water, with the bone and gristle removed, and if, while yet warm with cooking, put into a box or case, closed air-tight, would be within the description of the patent. Neither is anything said of the extent of the pressure to which the meat is to be subjected when placed in the box or case, except that it must be with sufficient force to remove the air and all superfluous moisture, so that the meat will form a solid cake; nor is the degree of warmth named which must exist when the meat is put into the box or case; neither is any description given of the manner in which the box or case is to be closed air-tight upon the meat. It is claimed by the plaintiffs that this combination of the manner of cooking and preserving meats for transportation is new, and entitled William J. Wilson to a patent. It should be stated that in the original as well as in the reissued patent of William J. Wilson, it seems to be implied by the second claim,

which is made in each, that the box or case must be *hermetically* sealed. Some criticism has been made upon the use of this word. We do not understand it to mean the same as if it were employed in describing anything as hermetically sealed in a laboratory, but only that the package should be so sealed as to exclude the passage of air into or out of the box or case. The patentee says that this box or case may be made of wood or metal, or both combined, of any suitable form or shape, and of any desired dimensions. It is, perhaps, unnecessary for us to inquire, as all the parties in this case use metal, whether or not the box or case could possibly be made of wood, or whether, in order to accomplish the object which the patentee had in view, it must always be made of metal.

We will, therefore, direct our attention, in the first place, to the question whether or not what William J. Wilson describes in his specifications, as just stated, was the proper subject of a patent.

The cooking of meat thoroughly by boiling it in water, so that the bone and gristle can be removed, has always been known. If it be admitted that the box or can must be hermetically sealed in order to be air-tight, that was an old device. The Appert process, described in Durand's English patent of 1810, required that the vessel (case or box) in which the food was placed should be air-tight, and that has ever since been regarded as indispensable in any process for preserving such food as is the subject of controversy here. Before the date of the patent to William J. Wilson, meat was placed in a package and subjected to pressure to remove the air, and it is clear any superfluous moisture was thus also removed from the meat. This is shown in the Marshall patent of 1864, because it is manifest his description of the process necessarily implies the removal of the superfluous moisture from the meat, as well as the removal of the air from the meat by pressure, and the hermetical sealing of the box or case in which the meat is placed for preservation, transportation, and sale. De Lignac (1855) submitted meat to a high pressure in the tin cans in which it was to be preserved, and which, apparently, were hermetically sealed. Lyman (1869) roasted his meat before putting it into the box or can, and he speaks in his specifications of stewing, *boiling*, or roasting the meat as being the ordinary mode at that time employed for preserving meat before packing it in cans. It will thus be seen that, prior to the issuing of William J. Wilson's original patent, in 1874, meat was cooked in various ways; was subjected to pressure, by which the air and the superfluous moisture were expelled from it, both before and after it was put in the case or box

for preservation, and these boxes or cases were hermetically sealed in order to make them air-tight.

The evidence seems to show that at the present time, in order most surely to preserve meat, it is necessary to subject the case or can in which the meat is packed to what is called "processing," which we understand to mean this: There is an opening in the can through which the meat is introduced. When the can is filled the hole is soldered up. It is then subjected to heat, a puncture made, the air and steam permitted to escape, and then the puncture also soldered up. This is not a new operation, but has long been known. In fact, it is substantially described in the Durand patent as a part of the Appert mode of preserving meat; for, although the details here described are not fully given in the Durand patent, still, they are necessarily implied from the statement that the aperture is left in the vessel until the heat shall have produced the proper effect, when it is to be closed. In Appert's method of preserving animal and vegetable food, vessels containing it were placed in a boiler filled with cold water, and then heat was applied up to the boiling point, and vegetables were to be put into the vessels in a raw or crude state—animal substances raw or partly cooked. The "processing," as it is termed, is not set forth in the William J. Wilson patent, unless necessarily implied from the statement that in thus preparing and packing the meat in an air-tight box or case it is a part of the operation. All that the patent says is that after the meat is put into the box or case, and the proper pressure is applied, the box or case is then closed air-tight upon the meat; and if it is also implied that the box, as we have heretofore assumed, is hermetically sealed, still, it is not stated that it is to be subjected to the "ordinary process" in canning.

It seems to be conceded that the reasons which render this necessary, in order to properly preserve meat or vegetables, were not well known at the time it was adopted. The theory at present received upon this subject is that it is necessary to expel from the can or case the air, and what are called the germs of fermentation and putrefaction which exist in the air, and which are destroyed when a high degree of heat is applied; and the air being thus expelled, before it can re-enter, the box is made air-tight. These invisible germs, supposed to be floating in the air, must be killed or removed, or they will enter into the vegetable or animal substances, and, in a short time, produce putrefaction, and, of course, destroy them as an article of food. There seems to be, therefore, nothing left in the description of the

mode of preserving meat pointed out in the patent of William J. Wilson unless it is in putting the meat while warm with cooking into the box or case. Can that be said to be patentable as a part of the mode of preserving meat, even if it be conceded it had never been done before? We think not. No more than if, prior to the date of the William J. Wilson patent, in order to preserve meat, it had never been put into a can or case thoroughly cooked. Neither of them seems to require ingenuity or the exercise of the inventive faculty. It is manifest, when we consider what was known at the date of the William J. Wilson patent, that these or other methods could be adopted of putting the meat into the case or can for preservation without encroaching upon the domain of the invention of any one.

There can be no doubt that, within a few years past, the method of preserving meat adopted by William J. Wilson has caused the article to be extensively used and sold in the markets of this and other countries. That argument has been pressed with great force upon the court in this case.

It may be admitted that, in all doubtful cases involving the validity of a patent, the fact that a mode described in the patent has gone into extensive use has and often will induce courts to decide in favor of the patent. But, while this is so, courts ought not, merely because of such use, to sustain a patent. The rights of the public are to be protected as well as those of individuals, and a monopoly should not be allowed unless the right to it is clearly shown. But the true explanation of the success which has attended this and similar modes of preserving meat may be in the fact that there has been a tendency in the public of late years to use all kinds of canned meats and fruits to a much greater extent than formerly, owing to the increased care and skill in their preparation and packing; and we think all William J. Wilson and those who act under him can claim is, that they have been particularly careful in selecting, preparng, seasoning, cooking, and canning their meat, by which it has acquired a high reputation; and upon that, in our opinion, they must rely, and not upon a monopoly under the patent law.

The John A. Wilson patent, of October 23, 1877, reissue No. 7,923, is for "an improvement in metallic cases for containing cooked meats, * * *" and, as he describes it,—

"Consists in a pyramidal-shaped can, having rounded corners and both ends slightly flaring, to form shoulders, against which the head or end pieces rest. * * * *A* represents the body of my can made in the form of a truncated pyramid, with rounded corners, and of any desired number of sides, though I

prefer to make with four sides. * * * In packing cooked meats it is done by means of a plunger through an aperture in the large head, *b*, which opening is afterwards hermetically sealed by means of a cap or plate, *d*. * * * The can is to be opened at the larger end, at or near the shoulder, by means of a suitable can-opener, so that when the can is reversed a slight tap on the smaller head will cause the solidly-packed meat to slide out in one piece, so as to be readily sliced as desired."

The claims in controversy here are the first and third:

(1) "A can for packing food hermetically sealed, and constructed of pyramidal form, with rounded corners and offset ends to support the heads, said heads being secured as shown and described."

(3) "As an improved article of manufacture, solid meat compressed and secured within a pyramidal case or can, so that said can forms a mould for the meat, and permits its discharge as a solid cake, substantially as specified."

And to these claims defendants interpose two defences:

(1) That the patent is void for want of novelty so far as the two features or claims in question are concerned.   (2) That defendants do not infringe.

It will be seen that the case or can covered by this patent must have certain features or characteristics:

(1) It must be of "pyramidal form, with rounded corners."   (2) It may have "any number of sides," although the patentee "prefers four sides."   (3) It must have "rounded corners," and the ends must be "slightly flaring," to form shoulders, against which the "head or end pieces rest."

There are some further details of construction, such as the mode of fastening in the heads by turning the flaring edge of the can inward over the flange of the head so as to make three thicknesses of metal, and, as he said, make a tight joint "with or without solder," and leaving an aperture or stud hole in the large head through which the meat is to be forced, which hole is to be closed by a cap.   But as no notice is taken of these in the claims, we presume they are not considered as of the substance of the patent.   By a stipulation filed in these cases, found on page 942 of defendants' record, it is admitted that "conical tin cans were made and used for canning alimentary substances, and sealed air-tight, prior to the date of the Wilson patents that are the subject of controversy in these cases."

The proof also shows that the French patent of one Emile Peltier was recorded in April, 1859, wherein he described pyramidal-shaped cans for the preservation of food, by hermetically sealing such cans. We may also add to this, from our common knowledge, the well-known glasses and moulds used by housekeepers in domestic life for preserving jellies, boned turkey, head-cheese, etc., which were all, from the

very necessity of the uses to which they were applied, more or less flaring, conical, or pyramidal in shape, and made so, presumably, for the purpose of turning out, or discharging, the contents in a solid cake. If, therefore, there was occasion, at the time this patentee entered the field of improvement, to use a pyramidal or conical-shaped can or case, there was no need to call in the aid of inventive genius to secure or contrive its construction. Those who wanted such a can or case had only to take those forms of cans then in general use, and adapt them, by mere mechanical changes, to the purpose for which they were designed. With these conical and pyramidal-shaped cans, well known and described in the art of preserving food, there was not only no room, but absolutely no need, for invention in applying them to the purposes of preserving cooked meats. There is nothing in the proof showing, or tending to show, that cooked meats require any different shaped cans to contain or preserve them than do other alimentary substances. The only advantage gained by this shape, suggested in the patent, is that the solidly-packed meat can be more compactly turned out of this form of can in a cake, so as to be readily sliced; but it could be equally well turned out of a conical can. In fact, a conical or pyramid-shaped or flaring can would seem naturally to suggest itself, from kindred uses in domestic life, almost as part of the idea or suggestion of packing meat solidly in a can for preservation. To come within this claim of the patent, the can must not only be pyramidal in shape, but it must have "rounded corners" and "offset ends to support the heads." The cans shown in the proof to have been used by the St. Louis Beef Canning Company, and by Robert D. Hunter, and others, are eight-sided pyramidal-shaped cans; that is, they are made with four narrow sides or panels and four wider ones, while those used by the Chicago Packing & Provision Company are pyramidal-shaped cans, with rounded corners. But this peculiarity of construction alone can hardly be deemed the subject-matter of a patent. In making a pyramidal-shaped can of sheet metal it is obvious that the corners would be naturally more or less rounded, unless special pains were taken to avoid that shape, and turn the corners squarely; and with conical and pyramidal-shaped cans, known to the art, it would not seem to be invention to vary the form of construction by turning the corners with a curve instead of forcing the sheet metal forming the shell of the can into an angle more or less obtuse.

In his specifications describing the mode of constructing his can

this patentee says: "Both ends of the body are made slightly flaring, so as to form shoulders or offsets, against which the heads are to rest." Waiving the question whether this feature of construction in a sheet-metal can could be the subject-matter of a patent, it is sufficient to say that we do not find this feature in the cans used by any of the defendants, while the complainants' cans put in evidence show that they do not confine themselves to this form of construction. All the defendants' cans which are shown as exhibits in the case are made by turning a rim of the head down over the outside of the body or shell of the can and fastening the head in place with solder, and none of them have the "offset" ends called for by the specifications of this patent; and, as we have already said, this seems to be the form of construction practically adopted by the plaintiffs, probably because all packers find they can make a can just as tight and useful, and more cheaply, by turning the head over the outside of the shell, than by following the exact description of the patent. But we also find, in the proof, that the cans shown to have been used by Gibbie and by Perl, as early as 1872, show the offset ends claimed by this patent. The "Gibbie" can has both the "rounded corners" and "offset ends," while the "Perl" can has "offset ends" as a distinctive feature of construction. We have, therefore, conical and pyramidal-shaped cans, and the "Gibbie" and "Perl" cans, with flat sides, but rounded corners and offset ends, known and in use long before this inventor entered the field, and feel compelled to reach the conclusion that there was no novelty in the device of a pyramidal-shaped can with rounded corners and offset ends, as described in this claim. So that it seems clear to us that the first claim of this patent must be held void for want of novelty.

As to the third claim the proof shows that Marshall packed meat solidly in a can in 1864. He says:

"I then subject a given quantity of the meat to pressure in a box or cylinder until all air is driven out, and the space occupied by the meat agrees with the size of the package it is intended to fill. When the meat is in its place the box is hermetically sealed, and in this state, retaining all its nutritive qualities, the meat will remain perfect as long as the package remains intact."

So Lyman, in his patent of 1870, described his process of packing meats solidly in cans as follows:

"I grind or otherwise reduce the roughest parts to about the consistency of thick mortar or putty, and then pack the best pieces in this reduced meat and press it all into a compact mass in the can, the interstices being filled with the reduced meat firmly pressed in, so as to expel the air, instead of filling them with the gravy or with water, as by the common modes. Sometimes I grind

the whole of the meat and pack the can with it, compressing it into a solid mass, then heat and seal it up from the air. and reheat it to combine any free oxygen that may possibly be left in the can."

Here we have in both cases solid meats, and in one case cooked meats, packed in cans for preservation. Neither of these patentees tell us the shape of their cans. But we cannot see how, with conical and pyramidal cans well known in the art as packages for the preservation of meats and other food, and the old art of packing or compressing meats solidly into cans, there can be any invention which should be protected by a patent in taking these well-known shaped cans and pressing into them cooked meat so as to form a solid mass or cake. The can was old and the meat cake was old.

The result is that the bills will be dismissed.