## LINDSAY *v.* STEIN.[*]

(*Circuit Court, S. D. New York.* February 24, 1882.)

1. LETTERS PATENT—IMPROVEMENT IN SLEEVE SUPPORTERS.

The invention described in letters patent No. 202,735, granted to J. P. Lindsay, April 23, 1878, for an " improvement in sleeve supporters," which consists of a clasp at each end of a connecting web or strap, is not merely a new application of the invention described in letters patent No. 156,429, granted to said Lindsay, November 3, 1874, for " stocking supporters." It is an article complete in itself, and involved invention.

[*]Reported by S. Nelson White, Esq., of the New York bar.

2. SAME—ABANDONMENT UNDER SECTION 4894, REV. ST.

Section 4894, Rev. St., which provides that upon failure to prosecute an application within two years after action is had thereon by the patent-office, it shall be regarded as abandoned, refers to the application, not the invention, and does not prevent a subsequent application for the same invention.

3. SAME—SAME—DEFENCES.

Such subsequent application can derive no aid as to time from the prior abandoned application. The applicant must stand, as to defences in suits on the patent, as if the new application were the first application.

4. SAME—PATENTABILITY—RECOGNITION BY PUBLIC.

Where an article is of great utility, has superseded older articles, and is largely recognized by the public and licensees as a useful invention, there is a strong presumption in favor of its patentability.

In Equity.

*Munson & Phillips,* for plaintiff.

*J. B. Staples,* for defendant.

BLATCHFORD, C. J. This suit is brought on letters patent No. 202,735, granted to the plaintiff April 23, 1878, for an "improvement in sleeve supporters." Some time in 1873 the plaintiff invented a clasp. He applied for a patent for it on the thirty-first of August, 1874, and obtained a patent for it, (No. 156,429,) November 3, 1874. The specification of that patent speaks of the clasp as one "for stocking supporters or various other articles of wearing apparel." The clasp is composed of two jawed levers, pivoted together, and a spring arranged between them. The tail of each jaw-lever is made concavo-convex in transverse section, the lower lever, with its jaw, being extended within the upper lever and its jaw. At the place of connection of the two levers the lower one is punched inward on its flanks, so as to form two concavo-convex teats or projections. The spring is shaped or made of wire, and has an eye which is slipped upon the two teats, after which the upper jaw-lever is arranged with respect to the spring and the lower jaw-lever in proper position, and then is punched inward on its flanks, so as to enter the two teats, and thus the two levers are connected and pivoted together.

The levers cover and protect the spring, and, as the specification says, prevent it "from being caught in the stocking or clothing," and from moving laterally or getting out of place. The specification says that each of the jaws may be notched or provided with teeth in its opposite edges, and that by having the jaws of the lower lever close into the concavity of the jaw of the upper lever a much better hold of the "material or stocking" will be secured than when the jaws abut together at their edges. The tail of the upper lever has a slot-

ted head, which is projected from the tail in such manner that its flanks, in case the clasp is pressed "against the leg of the wearer," may bring up against it "in a manner to prevent" the tail of the lower jaw from being accidently moved inward, so as to open the jaws sufficiently to cause them to let go their hold "on the stocking;" and "the slotted head is also to enable the clasp to be attached to a strap of a stocking supporter." The claim of No. 156,429, is this: "The clasp composed of the levers provided with the operative spring, pivoted together by means of the indentations, as described, and made with concavo-convex jaws and tails, and with the one jaw to close within the concavity of the other, all substantially as specified."

In January or February, 1874, the plaintiff invented the sleeve supporter afterwards patented by No. 202,735. It consisted of two of the clasps described in No. 156,429, one being at each end of a connection either elastic or non-elastic. No. 202,735 describes the supporter as one "for the sleeves of shirts and other garments." It is applied to the sleeve in a direction longitudinal with the arm, "thereby avoiding the compression and consequent interference with the free circulation of the blood incident to that class of supporters which partially or entirely encircle the arm." One clasp grasps a fold of the lower part of the sleeve to be supported, while the other clasp grasps a fold of the upper or supporting portion of the sleeve; the lower portion of the sleeve being drawn up to the desired distance before attaching the second clasp, the intermediate portion between the two clasps being drawn up into folds by that operation. The specification disclaims "a garment supporter consisting of an elastic strap and two tongued plates attached to its ends, the tongues being made to enter holes in the garments, and being afterwards clinched down thereon." It also says:

"My improved supporter simply grasps the sleeve, and does not go into or through it, and consequently, in detaching the supporter therefrom, it does not require to be pulled lengthwise, and thereby cause undue strain, which tends to tear the sleeve. Nor does my supporter require cuts or holes to be made in the sleeve to receive it, as is usually the case with garment supporters."

The claims of No. 202,735 are two, as follows:

"(1) The improved method of supporting or shortening the sleeves of shirts and other garments without compression, to avoid interference of the free circulation of the blood of the wearer incidental to the use of encircling bands by means of a holder, consisting, essentially, of a short piece of elastic

or non-elastic webbing, provided at each end, and an automatic clasping device applied to the sleeve in the direction of its length, substantially as described and shown. (2) As a new article of manufacture a sleeve supporter, consisting of the strap, B, provided at its ends with the clamping jaws, A A, all combined and adapted for use substantially as described."

The plaintiff, after making one of these supporters in January or February, 1874, showed it to other persons and illustrated its use at that time, and used it himself satisfactorily in March or April, 1874. He made a second supporter of the same structure in September, 1874, as a model for an application for a patent. His application was filed in the patent-office, complete, October 28, 1874. The specification was sworn to October 20, 1874. The drawings were substantially the same as those in No. 202,735, and the description was to the same effect. The claim was substantially like claim 2 of No. 202,735. The spring closes the jaws, and they are opened by pushing the tails of the jaws towards each other against the action of the spring, the tail of the lower jaw projecting downward. This application was rejected November 9, 1874, on the ground that it did not involve invention, in view of No. 156,429, and of a patent to Langford and one to Boughton. On December 26, 1874, amendments were filed—one, to obviate the Boughton patent, disclaimed a supporter consisting of an elastic strap and two hooked plates fixed to its ends, the hooks "being to enter a garment;" another disclaimed either of the clasps separate from the strap. The amendments were considered, and on January 2, 1875, the application was again rejected, in view of the same references. Nothing more was done till April, 1878.

On the ninth of April, 1878, a new application was filed, complete, with a new petition, oath, specification, drawing, and model, and a new fee. The oath was made April 5, 1878. On the eleventh of April, 1878, the application was rejected as being "found to be lacking in patentable novelty, in view of the state of the art," because the clasp was old, as seen in No. 156,429, and because "suspending straps, composed of an elastic band, with a clasp, buckle, or other adjusting device on each end, are also old, and therefore, in the present instance, the alleged invention is but the mere substitution of one old clasp in the place of another upon the ends of the strap, and is not deemed an invention." Reference was made, in the letter of rejection, to patent No. 88,984, to Robbins, and to patents to Gibbons, Church, and Eames, and Philbrook. On the eleventh of April, 1878, after said rejection, amendments were made making the specification and claims exactly as they are in No. 202,735. The application was rejected

again on the thirteenth of April, 1878, on the same references, and on a patent to Sanford, but on the same day the patent was ordered to be issued.

It is contended for the defendant that No. 156,429 contains everything that is found in No. 202,735; that there is no invention involved in passing from the clasp to the structure with one of the clasps at each end of it; and that the case is one of mere duplication or double use, or, at least, of merely a new application of the clasp. It is quite apparent, from the evidence, that the clasp was applicable, and was applied for use by being attached to one end of a piece of elastic and then fastened to a stocking to hold it up, the other end of the elastic being fastened by a button or other device to another garment above. Large numbers of the clasps were made and sold and used in that way. The plaintiff, almost simultaneously with his invention of the clasp, capable of such separate use, invented the supporter, consisting of the two clasps and the connecting strap. The latter invention was completed before he applied for a patent for the former. In that application he might have covered the supporter and also claimed the clasp separately, and one patent might have embraced both. The supporter is not merely a new application of the clasp. It is something more. As a structure, the two clasps with the uniting strap will do what one clasp, or one clasp with an attached webbing, cannot do. It is an article complete in itself, capable of use at any place without any appliance except what it contains, and of being moved from one place to another, without any previous special preparation of the garment to receive it. It involved invention beyond what the clasp alone indicated.

The specification of No. 202,735 is criticised as being obscure and as not pointing out what invention is claimed. The first claim is properly to be construed as a claim to using the structure described, consisting of material with the clasp described, or its substantial equivalent, at each end, when such structure is applied to the sleeve in the direction of its length. There is no valid objection to this claim. The article can be used otherwise than lengthwise of the sleeve. The second claim is for the article, irrespective of the manner in which it is used. The first claim may be unnecessary, and there may be little practical difference between the two claims. But the claims sufficiently point out the inventions, and they are patentable.

By section 12 of the act of March 2, 1861, (12 St. at Large, 248,) it was enacted as follows:

"All applications for patents shall be completed and prepared for examination within two years after the filing of the petition, and in default thereof, they shall be regarded as abandoned by the parties thereto, unless it be shown, to the satisfaction of the commissioner of patents, that such delay was unavoidable."

By section 32 of the act of July 8, 1870, (16 St. at Large, 202,) it was enacted as follows:

"All applications for patents shall be completed and prepared for examination within two years after the filing of the petition, and in default thereof' or upon failure of the applicant to prosecute the same within two years after any action therein, of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown, to the satisfaction of the commissioner, that such delay was unavoidable."

This section is substantially re-enacted in section 4894 of the Revised Statutes, approved June 22, 1874, the only change being that the words "the filing of the petition," in section 32, are altered to the words "the filing of the application," in section 4894. On comparing section 32 of the act of 1870 with section 12 of the act of 1861, it is seen that a material change was made by the addition, in section 32, of the words "or upon failure of the applicant to prosecute the same within two years after any action therein." The effect of the addition was that when an applicant for a patent should make an application, and complete it for examination, and the patent-office should take action upon it and reject it, and notify him of such action, and he should fail to prosecute it within two years after such rejection, it should be regarded as abandoned, so that it could not be resumed and prosecuted further after the lapse of such two years, unless it should be shown, to the satisfaction of the commissioner of patents, that such delay was unavoidable. It is not the invention which should be regarded as abandoned, but the application.

In the present case the application of October 28, 1874, was rejected a second time January 2, 1875. That application was never prosecuted at all after that. More than two years elapsed, and in December, 1877, the plaintiff employed new attorneys, and gave them a power of attorney, and revoked the power of attorney given to his former attorney. A paper to that effect was filed in the patent-office, December 17, 1877, in the files of the first application. The new attorneys, with the whole matter before them, advised the plaintiff that he had better make a new application. They did this, unquestionably, because they saw that they could not show to the

satisfaction of the commissioner that the delay beyond two years from January 2, 1875, was unavoidable. The new application was made complete April 9, 1878.

The defendant contends that the effect of the act of 1870 is that when an application is, under section 32, to be regarded as abandoned, no new application for a patent for the same thing can be subsequently made. There is nothing to prevent a subsequent application. When made it can derive no aid, as to time, from the prior abandoned application, and the applicant must stand, as to defences in suits on the patent, as if the new application were the first application. Therefore, as applied to the present case, the words "two years prior to his application," in section 4886 of the Revised Statutes, and the words "two years before his application for a patent," in section 4920, must mean two years before April 9, 1878, so that No. 202,735 will be invalid if the inventions covered by it were in public use or on sale in the country for more than two years before April 9, 1878. The decisions of the courts under the statutory provisions before that in section 32 of the act of 1870, in regard to the continuity of an application once made, can have no application to a cause like the present, in view of the express provision of section 32. An application which is to be "regarded as abandoned" must be regarded as abandoned by the commissioner and the courts, and, if it is to be regarded as abandoned, it cannot be regarded as subsisting for the purposes of sections 4886 and 4920. The cases of *Singer* v. *Braunsdorf*, 7 Blatchf. C. C. 521; *Blandy* v. *Griffith*, 3 Fish. Pat. Cas. 609; *Howes* v. *McNeal*, 15 Blatchf. C. C. 103; *Godfrey* v. *Eames*, 1 Wall. 317; and *Smith* v. *Goodyear Dental Vulcanite Co.* 93 U. S. 486, arose under statutory provisions enacted before the act of 1870, and can have no application to the present case.

It is argued for the plaintiff that as No. 202,735 was granted on the second application for the same invention that was claimed in the first application, it must be presumed that the commissioner had before him evidence showing that the delay in prosecuting the first application was unavoidable. This would be so if in fact the commissioner had allowed the first application to be prosecuted further. But he did not. It was the application of April 9, 1878, that was rejected April 11, 1878, and granted April 13, 1878, and No. 202,735 was issued on that application, as appears on its face and by the records of the patent-office.

v.10,no.9—58

The defences of want of novelty and of public use and sale of the invention for more than two years before the application for the patent are urged by the defendant. The latter defence is not set up in the answer, but the plaintiff appears desirous of having it considered under the proofs.

There is no satisfactory evidence that the plaintiff, either by himself or by his agents, allowed his sleeve supporter to be in public use or on sale at any time prior to two years before April 9, 1878; or that a structure substantially like his was in public use or sale at any time prior to two years before April 9, 1878. The date of any sale by Taylor Brothers cannot be fixed earlier than January, 1877. There was no sale by Shelby before the last part of 1876. The Thomas transaction was in May, 1876. The evidence as to sales by Rollins does not show, beyond a reasonable doubt, that such sales were made before April 10, 1876.

Defendant's exhibits 1 and 2 are arranged to penetrate or pass through at one end one portion of the article to be supported, while at the other end are loops or hooks to pass over or around buttons or some other previously-arranged attaching means formed upon the garment. Defendant's exhibits Nos. 3 and 16 have no hinged jaws, and require a further shortening of the garment to allow of attaching or disengaging the wires, and the device is liable to lose its hold and cannot seize the margin of a garment. Defendant's exhibit No. 21 is the patent to Robbins, No. 88,984, and defendant's exhibit No. 5 is a garter made according to that patent, in part. They show devices the structure of which is such as to necessitate the penetration of the garment at each end of the webbing by the devices. The Robbins patent is the only one of the prior patents referred to by the patent-office (except No. 156,429) which has been put in evidence by the defendant. It shows two like devices at each end of a piece of webbing. It is of the date of 1869. But the existence in it of identity between the fastening devices at each end of it does not, in view of the evidence as to the invention by the plaintiff of the clasp and of the supporter, and of the characteristic features of the supporter, show a want of patentability in the invention of the supporter.

The Ellis patent, No. 137,539, requires a button at one end of the device. The Cook patent, No. 55,064, has no clamping jaws, and no webbing with holding means at each end of it. The Kendall or Vail patent, No. 61,011, has no clamping jaws on each end of a strap of webbing. Defendant's exhibit No. 22, the Demorest book, is not

proved as to its date of publication, and is not set up in the answer. Independently of this, it is not clear what the thing shown in it is, or how such thing is to be used. From what can be made out it is liable to the same objections as defendant's exhibit 3, requiring the fabric to be forced into a narrow opening, and requiring increased shortening to free the fabric, and having no clamping jaws. As to the exhibits, Furness and Furness No. 3, no original article actually made more than two years before April 9, 1878, is produced. The question as to the time when any sleeve supporters of the kind were made and sold rests wholly on the unaided memory of Mr. Furness, and, in view of all the evidence, it must be held that the defence as to the Furness sleeve supporter is not established. Irrespective of this, it is not at all clear that the Furness exhibits embrace the plaintiff's invention, or will practically accomplish the results which the plaintiff's supporter will accomplish. None of the prior articles or patents anticipate the invention of the plaintiff, and none of the defences considered are established.

It appears that the patented article is one of great utility, and has found a ready market, as compared with any prior structures. Under the plaintiff's authority, from 850,000 to 1,150,000 pairs of his supporters have been sold during 1878, 1879, and 1880, and there have been infringments. The article combines these points of advantage: It does not compress the arm; it does not require adjustment of length for arms of different sizes; it does not require previous preparation of the garment by putting on buttons or making eyelet holes at either end; it can be used to support cuffs and stiff articles on their edges; it can be applied by one hand; it is secured without perforating the garment; it is not pulled off by a slight strain; it does not require to be pulled lengthwise to release its hold. It has superseded older articles, and is largely recognized by the public and licensees as a useful invention. All these matters are very persuasive in favor of its patentability. *Smith* v. *Goodyear Dental Vulcanite Co.* 93 U. S. 486, 495.

The defendant has sold two structures, No. 1 and No. 2. No. 2 is identical with the plaintiff's in all substantial particulars. It is a sleeve supporter formed of a short piece of elastic webbing, with a clasp at each end. Each clasp is composed of two jawed levers pivoted together, with a spring between them which closes the jaws automatically, and the jaws are opened by pressing together the tails of the levers. Each jaw has across its end teeth or projections, which take into corresponding indentations in the end of the other

jaw. This construction is an equivalent construction for the closing of the lower jaw within the upper jaw, as shown in No. 156,429, and in the drawings of No. 202,735. The bending of the fabric, in the one case transversely and in the other case longitudinally, assists in holding it, though it by no means follows that No. 202,735 would not be infringed if the clasps had flush-meeting edges in the jaws, with a spring, or means of holding them together, sufficiently powerful. No. 1 is a sleeve supporter having at each end of a piece of elastic webbing a clasp made of two jaws of springy metal, the end of each of which is a lip projecting towards the other jaw, one lip shutting inside of the other and the ends of the lips not meeting. There is a slide enclosing the shank of the two jaws, and the bite is made by sliding the slide towards the lips, which forces the lips together. Sliding the slide in the reverse direction allows the jaws to open, which they do by their springy action, they being set to stand open unless made to shut. They shut against the action of the spring, while in the plaintiff's form the clasp opens against the action of the spring.

The form of clasp in No. 1 is substantially the clasp shown in the Ellis patent, No. 137,539, granted April 8, 1873. But that patent shows that Ellis contemplated the use of only one clasp, and that at the top of a stocking, while above the supporter was to be attached by a button to a waistband. No. 1 has all the points of advantage of the plaintiff's structure. It has an automatic clasping device at each end, consisting of clamping jaws, and the structure as a whole, and in its parts, and in their co-operation to effect the result produced by the whole, is the equivalent of the plaintiff's structure. The change in the springy action, to hold open instead of to hold shut, is immaterial in regard to the action of the structure as a whole. There was nothing in the Ellis clasp by itself to indicate the plaintiff's supporter or No. 1, any more than there was anything in the plaintiff's clasp by itself to indicate the plaintiff's supporter or No. 2. On the foregoing considerations it must be held that both No. 1 and No. 2 infringe the second claim of No. 202,735, and there must be a decree to that effect, and for an account of profits and damages, with a perpetual injunction, and costs to the plaintiff.