LAY et al. v. INDIANAPOLIS BRUSH & BROOM MFG. CO.

(Circuit Court of Appeals, Seventh Circuit.   January 12, 1903.)

No. 894.

1. PATENTS—INVENTION—BROOMS.
    In making a sheet metal broom case to hold the brush together at the upper end where it fastens to the handle, there was no patentable invention involved in making it flaring, to conform to the shape of the broom, instead of straight up and down, nor in making it of a single piece of metal with the ends fastened together at one side of the broom, instead of in two pieces fastened together at either side.

2. SAME—ABANDONMENT OF APPLICATION — SECOND APPLICATION FOR SAME. INVENTION.
    The failure of an applicant for a patent to take further action for nearly three years after his application was finally rejected, and notice thereof received, operated as an abandonment under Rev. St. § 4894 [U. S. Comp. St. 1901, p. 3384], unless the application was reinstated for unavoidable delay; and a new application thereafter filed cannot be treated as a continuation of the old proceedings, for the purpose of avoiding the effect of prior use.

3. SAME—UNAVOIDABLE DELAY IN PROSECUTION—NEGLIGENCE OF ATTORNEY.
    The negligence of an attorney which works the abandonment of an application for a patent under the statute does not constitute unavoidable delay which will avoid the effect of such abandonment as to the applicant.

4. SAME—INVENTION—BROOMS.
    The Lay patent, No. 652,542, for a broom case, is void for lack of invention, and for prior sale and use of the article.

Appeal from the Circuit Court of the United States for the District of Indiana.

C. C. Linthicum, for appellant.
V. H. Lockwood, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge.   This is an appeal by complainants below from a decree dismissing a bill brought for infringement of patent No. 652,542, for an improvement in broom cases, granted Samuel C. Lay, June 26, 1900.   The defenses are:   (1) Prior sale or use two years before filing the application for the patent.   (2) Prior sale or use two years before filing a prior application for a patent on the same invention.   (3) Want of novelty.   The bill was dismissed in the Circuit Court, after hearing, on the ground of prior sale and use for nearly five years before filing the application for the patent in suit, with a strong intimation that the patent was void for want of novelty amounting to invention.   We think the decree sound on both of these grounds.

A prior patent, No. 208,685, was obtained by Joseph Lay in 1878 for an improvement in brooms, and another, No. 272,890, in 1883, and the complainants had been engaged in the manufacture of brooms at the city of Ridgeville, Ind., for 24 years or more prior to the hearing in this case.

The 1883 patent was for a sheet-metal cap formed of two thin sheets having their edges interlocked at the two narrower sides or edges, like this:

These complainants first manufactured brooms with this metal cap or case to inclose the upper end of the brush where the handle is inserted. This was in 1881, before the second patent was issued. This case was clinched on both edges by an interlocking of·the metal case, and nails were driven through the interlocking parts. For the first inch or so at the bottom the case is straight, and does not follow the slope of the broom. The upper part of the case slopes or flares upwardly toward the handle. This is complainants' broom No. 1. The testimony shows that it was a good, strong broom for heavy sweeping, but cost too much, was most too good for the market, and the profits were too light. Besides this, the material had to be cut too short in making the connection with the handle, so that the case did not secure a firm grip on the material.

Some time afterwards, but early in the manufacture, complainants made another case, which is marked as their No. 2 broom, shaped like this:

In this broom the case flares all the way from the bottom to the top of the metal case, following the natural slope of the brush. This case is fastened by interlocking on the two edges the same as in No. 1, except that the clasp is wider, and is nailed in a similar manner. The complainants say they began the manufacture of this broom in 1890. The purpose of the change was: (1) To answer the objection of too great cost, and give the public a cheaper broom; and (2) to secure the handle and brush together with a wider fastening or clasp. But the difficulty with this broom was the tendency to become loose at the interlocking edges. There were also other objections, as that the insertion of the nails to hold the material together had a tendency to unlock the edges and spread them apart. To remedy

these defects, complainants made another form of case, which is No. 3, about 2¾ inches long, with straight edges, like this:

Why they went to a straight up and down case for a sloping broom, after using a flaring case so many years, is not very apparent. Afterwards they adopted the flaring case, such as is described in their last patent of 1900, tapering with the taper of the broom, like this:

This style of flaring case to fit a flaring broom is the one which would naturally suggest itself to a noninventive and nonmechanical man, because it fits the natural shape of a brush broom, which all the witnesses agree is flaring, that is, wider at the lower end where the sweeping is done, and continuing to a narrower compass at the handle. What invention there would be in adopting such an obvious style of case, it is difficult to see. It would seem to be about as sensible to place a straight iron case on a flaring broom as to put a straight iron hoop on a flaring wooden barrel or pail. It would not require invention to fit the case to the slope of the broom, and this is just what the complainants did by their Nos. 4, 5, and 6 cases, which are substantially alike. In all these cases the interlocking and nailing is on one side instead of two, a change which would not seem to require invention, or even mechanical skill, to perform. But this is the substance of the complainants' 1900 patent: (1) the employment of a flaring metal case to fit a flaring broom, and (2) the nailing on one side instead of two. To further show the preposterousness of claiming invention for a flaring case in 1900, it is only necessary to observe that they had themselves used a flaring case of a little different form from the time they first began business. Indeed, the straight

120 F.—53

iron jacket of 1890 is the only case they have ever used that was not flaring. All the other five cases on exhibit are flaring, either in whole or in part. All are wholly flaring except No. 1, and that is flaring for about one-half its length. So that, in view of the state of the art when the patent in suit was applied for, it seems clear that the patent shows no novelty amounting to invention. And this is just what the Patent Office at Washington decided upon full presentation of the complainants' claim in 1897.

2. In 1897, the complainants, through their attorney, Chester C. Shepherd, of Columbus, Ohio, made application for a patent on this No. 4 flaring metal case. The application was filed on March 5, 1897, serial number 626,069, and, when reached in its order by the examiner, was rejected on the ground of want of invention, in view of the state of the art. Mr. Shepherd then renewed the application and made an argument, and he thinks probably an amendment, to the case, which resulted in a second rejection. After receiving two or three rejections, he gave a power of attorney to W. S. Boyd, a patent solicitor in Washington, who also tried to get the patent. Mr. Boyd had the case, in conjunction with Mr. Shepherd, for a year or two, during which time Mr. Shepherd would call on Mr. Boyd at Washington, who always reported to him that, although he had made numerous efforts to secure an allowance of the patent, he had failed. The final rejection was on June 26, 1897, as appears by the following entry in the Department of the Interior:

"Department of the Interior.

"United States Patent Office,
                          "Washington, D. C., June 26, 1897.
                                  "Mailed      "    "    "

"Samuel C. Lay, Care C. C. Shepherd, Columbus, Ohio.   Brooms, No. 626.-069.   Filed Mch. 5, 1897.

"The claim presents nothing patentable over the references of record, and is rejected.

"Applicant may for the purpose of appeal consider this rejection final.
    "H.                                   C. G. Gould, Examiner.

"Serial No. 626069 Paper No. 3.
        "Final Rej:  ·

"Dated June 26, 1897."

Nothing further was done toward obtaining a patent until some three years had elapsed. On January 6, 1900, the complainants discharged Mr. Shepherd, and gave a power of attorney to Higdon & Longan, of St. Louis, and R. P. Haines, of Washington, D. C. On February 21, 1900, the attorneys at St. Louis sent to complainants an affidavit to sign and swear to, and return to them as a preliminary foundation for obtaining the patent. The oath is signed by Samuel C. Lay, and is as follows:

"Oath.

"State of Indiana, County of Randolph, City of Ridgeville—ss.

"Samuel C. Lay, the above named petitioner, being duly sworn, deposes and says that he is a citizen of the United States and resident of Ridgeville, Ind., and that he verily believes himself to be the original, first, and sole inventor of the improvement in brooms described and claimed in the annexed specification; that he does not know and does not believe that the same was ever known or used before his invention or discovery thereof; or patented or de-

scribed in any printed publication in the United States of America or any foreign country before his invention or discovery thereof, or more than two years prior to this application, and that no application for foreign patent has been filed by him or his legal representatives or assigns in any foreign country, except as follows:                                    Samuel C. Lay.
  "Sworn to and subscribed before me, this 21st day of Feb. 1900.
  "[Notarial Seal.]                          S. R. Allen, Notary Public.
  "Com. Ex. April 7" 1901.
  "Serial No. 7,368   Paper No ½            U. S. Patent Office
    "Application                                Mar. 5, 1900
  "Filed Mch. 5, 1900.                        Chief Clerk
    "S. C. Lay."

In order to obtain a patent it was necessary for the complainants to make oath that the proposed invention had not been in public use or on sale in the United States for more than two years prior to the application. This oath Mr. Samuel C. Lay took and subscribed, and upon this oath, after some amendments and correspondence, the patent was issued on June 26, 1900, just three years after the final rejection of the former application, June 26, 1897.

It is clearly shown by the testimony, and is now admitted by the complainants, that this material statement in the oath taken by Mr. Lay is not true. It is in evidence, and fully admitted by complainants, that the improvement had been in public use and on sale by them from 1895 to 1900, for a period of nearly five years, when this oath was taken and filed. To obviate this rather awkward situation, complainants' counsel contends, but without much tenable ground for it, that Mr. Lay did not intend to swear that his invention had not been in public use or on sale for more than two years prior to "this" application—that is to say, the application he was then making in 1900—but prior to "his" application, referring to the application he had made three years previous, in 1897, the final rejection of which was filed on June 26, 1897. We can see no good ground for this claim in the record. The attorneys knew what they were doing when they drew this affidavit. They knew that an application made in 1900 could not be treated as an amendment or continuation of an application which had been presented three years previously and finally passed upon by the department. No action was ever taken by the Patent Office, and no request for any action, on the first application since its final rejection on June 26, 1897, and it must therefore be regarded as abandoned under all the authorities, and by the plain and emphatic language of the statute. Section 4894, Rev. St. 1878 [U. S. Comp. St. 1901, p. 3384], provides:

"All applications for patents shall be completed and prepared for examination within two years after the filing of the application, and in default thereof or on failure of the applicant to prosecute the same within two years after action therein, of which notice shall be given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable."

The language of this statute is plain, and requires no aid from construction. The Patent Commissioners have always held that the second application cannot be considered a continuation of an abandoned application. Ex parte Livingston, 20 O. G. 1746; Hien v. Pungs, 68 O. G. 657; Ex parte Beggs, 50 O. G. 1130; Carty v.

Kellogg, 73 O. G. 285. These decisions of the Commissioners accord with the decisions of the courts and the elementary writers upon patent law. Lindsay v. Stein (C. C.) 10 Fed. 912; Weir v. Morden (C. C.) 21 Fed. 243; Kittle v. Hall (C. C.) 29 Fed. 508; Walker on Patents (3d Ed.) § 147; Robinson on Patents, § 580.

Under this statute and the doctrine of the authorities cited, it is evident that the application of March 5, 1897, must be regarded as abandoned, and that of March 5, 1900, held to be the one on which the patent was granted, and so, under the complainants' own testimony, would be invalid because the invention, whatever its merits. might otherwise be, had been in public use and on sale in the United States for nearly five years before the application on which it was granted was filed.

A not very plausible attempt has been made to bring this case within the exception named in the statute, of unavoidable delay, and so redeem it from its apparent hopeless and inaidable estate, based upon the assertion that the Washington associate, Mr. Boyd, was guilty of negligence in the prosecution of the claim for a patent. The principal attorney, Mr. Shepherd, was a witness for complainants on the hearing, and his testimony shows him to have been diligent in his endeavor to obtain the patent. The Patent Office decided against the claim, but its decision was sound, and Mr. Shepherd could not get it changed, although he made proper effort to do so. The difficulty lay in the want of merit in the claim.

The other assumption is that, if the complainants failed in their application through the negligence of their attorney, the delay would be unavoidable, which is wholly unwarranted in the law. It is of the very nature of negligence that it should not be unavoidable, otherwise it would not be actionable. The negligence of the attorney would be the negligence of the principal. The purpose of the statute was to put an end to such pleas, and there would be no limit to a renewal of these applications if every application, however remote, could be considered under the plea of negligence of attorneys, by whom their business is generally conducted.

3. We think, also, that, according to the great weight of evidence, the invention disclosed by the patent in suit had been in public use and on sale for more than two years before the application of March 5, 1897, was made. According to complainants' testimony, they began the manufacture in the summer of 1895, which would be a little less than two full years before the application of March 5, 1897, was filed. But by the defendants' testimony these same broom cases had been manufactured and sold, both at Ridgeville by the complainants, and at Chattanooga by the Crescent Manufacturing Company, of which Frank R. Lay was a member, from 1890 continuously, and the broom put upon the market. The evidence on this question is conflicting, but we think the weight is with the defendants. On this very question of time, the complainant Samuel C. Lay having admittedly testified in his affidavit to obtain the patent that the invention had not been in public use or on sale for more than two years previous to the time of making the application on March 5, 1900, and it now being conceded that it had been on sale for nearly

five years, the court has not any reason to be prepossessed in favor of the complainants' testimony upon the same subject on the hearing; but, giving the due weight to evidence upon each side, the clear preponderance is with the defendants that this improvement had been in public use and on sale from 1892, or before, down to the hearing. There are Joseph Lay, Samuel C. Lay, partners and complainants, Ernest Hossler, their engineer, who says he did not see the flaring case before 1895, and Wm. H. Clouse, foreman, testifying for complainants. For the defendants there are 11 witnesses, a large majority of them unconnected with the case, testifying that this form of case was manufactured and on sale from 1888 and 1889. Seven of these witnesses had worked in complainants' shops. Sylvester Thompson, an apparently disinterested witness, says he nailed brooms for Lay & Co. exactly like complainants' broom, in 1888, and that these brooms were put on the market and sold by the company, and he gives his reasons why he remembers the date. Frank R. Lay, not interested with defendants, and a brother of Samuel C. Lay, testifies that he was salesman for the complainant company in 1887, 1888, 1889, and 1890, and sold these manufactured products to the trade generally; that they began the manufacture and sale of these brooms, made according to the patent in suit, in 1889. The cases were made of one strip of iron locked together; that the practicability of such construction was demonstrated by making some without a taper, like No. 3, but not to any great extent; that the broom they made then was the same as the No. 6 case; and that they made many of them in 1889, and have been making them with the same case ever since. Sylvester Addington worked for complainants in 1893 and 1894 and they were making the same broom in 1893. Wm. A. Studebaker says he worked for the Crescent Manufacturing Company in 1891 and 1892, and that they made and sold this same broom. M. W. Landwich during these years bought the same broom of complainants in November, 1894, and this same broom is brought into court as an exhibit for defendants. J. A. Heston, a disinterested witness, says he made caps for Lay & Co. from 1890 to 1893 like complainants' Exhibits Nos. 5 and 6, and made also a few like Nos. 1 and 4. M. B. Stratton, a defendant, says he worked for Lay & Co. from 1887 to 1900; that from 1888 to 1892 they made and sold and shipped brooms made with the No. 6 cap; that in 1892 he went to Chattanooga, and worked for the Crescent Manufacturing Company, of which Frank R. Lay had the management, and that they made and put upon the market the same kind of broom that was made by complainants with No. 6 cap or case; that he did the shipping for the company at Chattanooga; that they made eight or ten dozen a day, and sold and shipped them; that he returned to work for Joseph Lay & Co. in 1893, and that at that time they were making and selling the same broom, and continued to do so in 1894, and until June, 1900; and that he knows of his own personal knowledge that Lay & Co. had been continuously manufacturing and selling the same broom from 1888 to 1900. Other witnesses are to the like effect. The catalogue of Lay & Co. issued in 1891 shows the same broom that their subsequent catalogues, issued after 1895, show.

Aside from the positive testimony of witnesses, the probabilities of the question go far to support the defendants' contention. It seems highly improbable and quite unaccountable, with the known and manifest imperfection in form of the No. 3 case, which is a straight iron jacket made to put upon a tapering or flaring broom, and which crushed the material so hard at the bottom as to break it, that they should continue its use for so long a time, say from 1888 up to 1895, especially after they had before used a flaring case which would more nearly adjust itself to the shape of the broom. Samuel C. Lay shows the advantage of the tapering broom very concisely in these words:

"It is a gradual flare of the material from the bottom of the broom to the top. There are no angles in the material at any point, but all lies straight in about the position it should be when finished."

Very well. But why go on for several years putting a straight iron case on a broom intended from the first to be flaring? Mr. Joseph Lay's cross-examination on this point is interesting, but not very convincing testimony in his favor:

"X. Q. 336. You have described certain defects and drawbacks in making brooms with a No. 3 case, and in the brooms after they were made. Why was it that you continued to make such difficult and defective brooms for ten years without flaring the No. 3 case? A. Well, we hadn't found out before. X. Q. 337. You had been using flaring cases and making brooms with flaring cases like No. 2. Why do you say you hadn't found it out? A. There is a wide difference between No. 2 and Nos. 3, 4, 5, and 6. The No. 2 was not fit for heavy brooms, or for any other kind to any great extent, it being made of two pieces and locked on the edge, making a short lock; no way of securing properly except by riveting the seams, which made it too expensive for practical use. X. Q. 338. Well, you had found out the advantages of flaring cases in using the No. 2 cases, had you not? A. Yes. X. Q. 339. Being aware of such advantages, why was it that you, as you have testified, proceeded to make brooms with a case that didn't flare, and which made the broom harder to make and not so good after they were made? A. Just like all other inventions, it takes time to develop a good thing, and as soon as we found out how to make a flaring case that would answer a better purpose than the No. 2 we commenced making them, which was in 1895. X. Q. 340. Did it take you ten years to adopt the flaring idea in connection with the No. 3 case, when that idea was familiar to you in connection with the No. 2 case? Do you mean to say that it would take anybody more than three or four days of making brooms with the straight No. 3 case to discover the difficulties and defects, and then flare it, when he was at the time perfectly familiar with the use of flaring cases? A. It would depend something on the one operating, and the time they had to study over it. Brooms had been made for a hundred years prior to this without anybody discovering the flaring case prior to this, and finding it better than the other means of manufacturing it."

These answers are probably as good as could have been given under the circumstances, but do not furnish a satisfactory explanation for continuing the straight iron jacket so many years instead of using a case more in keeping with the proper form of the broom.

The decree of the Circuit Court is affirmed.