## FEATHERSTONE v. GEORGE R. BIDWELL CYCLE CO.

### (Circuit Court, S. D. New York, October 1, 1892.)

### No. 5,136.

1. PATENTS FOR INVENTIONS—ANTICIPATION—PNEUMATIC CYCLE TIRES.
   Claim 4 of reissued patent No. 11,153, granted March 24, 1891, to John B. Dunlop, upon original patent issued to him September 9, 1890, covers, in substance, the union of an inflated, expansible tubular tire to the rim of a cycle wheel by means of a nonexpansible confining envelope surrounding the tire, and having flaps, which are turned over and cemented to the inner surface of the rim. *Held*, that this claim was not anticipated by patent No. 5,104, issued May 28, 1847, to Robert W. Thompson, for an improvement in carriage wheels, etc., claiming a rubber tube, a covering of canvas, and an outer casing, consisting of two strips of leather, one bolted to the outer side of the felly, and fastened to the other strip by rivets or by leather thongs.

2. SAME—INVENTION—PRIOR ART.
   There was nothing in the prior state of the art, as shown either by the nine patents issued in 1889 to A. W. Thomas, or by other patents, to render such claim invalid for want of invention, especially in view of the fact that this tire was the first one commercially adopted, and that it went into immediate and very extensive use.

3. SAME.
   But, in view of the prior state of the art as shown by the foregoing patents, and especially by the Wilkins patent, there was no invention in the additional element added by the fifth claim of the Dunlop patent, namely, an "outward protective covering of India rubber, the edges of which are secured to the inner surface of the rim, as set forth."

4. SAME—REISSUE—ESTOPPEL—APPLICATION—FALSE STATEMENT.
   In his affidavits accompanying the application for the original American patent Dunlop swore that the invention was the same as that covered by the British patent issued to him in 1889. Defendants claimed, however, that the first claim of the reissue is identical with a prior English patent issued to the patentee in 1888. *Held* that, even if this were true, and the affidavit consequently false, there being no other evidence of fraud, the whole of the reissue was not invalidated thereby, it appearing that the question of identity may have been a doubtful one, which the applicant would probably leave to his attorney.

5. SAME—ESTOPPEL.
   After the issue of the original American patent, and before his application for the reissue, the patentee applied for a second American patent, swearing that the invention therein claimed had never been patented, with his knowledge or consent, in any country. This statement was untrue as to part of the claims, for they had been described in the English patent of 1889. *Held*, that this false statement, in the absence of the other elements of an estoppel, did not preclude the patentee from asserting the claims of the reissue

6. SAME—REISSUE—VALIDITY—SAME INVENTION.
   On an examination of the patents it sufficiently appears that the invention covered by the fourth and fifth claims of the reissue was the same invention intended to be secured by the original patent of September 9, 1890.

**7. SAME—BROADENING OF CLAIMS—LACHES.**

    The fact that these claims of the reissue omitted certain strips of elastic material, which, by the original patent, were to be inserted between the edges of the wheel rim and the strengthening folds enveloping the tire, so as to protect these folds from injury by the edges of the rim, did not invalidate the reissue by thus broadening the claims, for these strips were not essential to the combination, and did not involve inventive skill, and it appeared that no adverse rights accrued in the mean time, and that the reissue was applied for within 4½ months from the date of the original.

In Equity. Bill by Alfred Featherstone against the George R. Bidwell Cycle Company for infringement of reissued letters patent No. 11,153, granted March 24, 1891, to John B. Dunlop, upon the original patent issued to him September 9, 1890. Decree for complainant.

Duncan & Page, for complainant.

Francis T. Chambers, for defendant.

TOWNSEND, District Judge. This is a suit brought for the alleged infringement of reissued letters patent No. 11,153, for improvements in wheel tires for cycles, and in the means of securing them to wheel rims, with prayer for an injunction and an accounting. The patentee, Dunlop, originally obtained two patents in Great Britain,—the first in 1888, for a pneumatic tire; the second in 1889, for an improvement in said tire, and in the means of securing it to wheel rims. The English patent of 1889 claimed an inflated tube of India rubber, enveloped by a strengthening fold of canvas cemented to the metallic rim of the wheel and to an outer fold of India rubber thickened at its point of contact with the ground. The metallic rim of the wheel was flattened so as to furnish a large bearing surface, and was enveloped with a protective strip of canvas or linen. To these protective strips other strips of some elastic material were to be fastened between the edges of the rim and the strengthening folds which enveloped the rubber tube, so as to protect these folds from being injured by the edges of said rim.

On September 9, 1890, Dunlop obtained a patent in the United States for this invention, describing it as the one patented in Great Britain in 1889. On November 24, 1890, he applied for another patent, which was issued to him June 2, 1891. The original application for this patent contained claims substantially the same as those involved in the present suit. On January 14, 1891, Dunlop surrendered his patent of September 9, 1890, and prayed for a reissue thereof, which was granted to him March 24, 1891. For the infringement of this patent the present suit is brought. Claims 4 and 5 of the reissue are the only ones to which it is at present necessary to refer. They are as follows:

    (4) "The combination, with the rim of a cycle wheel and an inflated, expansible tubular tire, of a tubular, nonexpansible, confining envelope surrounding said tire, and formed or provided with flaps or free edges turned over and cemented to the inner surface of the rim, as set forth."

    (5) "The combination, with the rim of a cycle wheel and an inflated, expansible tubular tire, of a tubular, nonexpansible, confining envelope surrounding said tire, and provided with flaps or free edges secured to the rim, and an outer protective covering of India rubber, the edges of which are secured to the inner surface of the rim, as set forth."

The defenses are: (1) Anticipation; (2) no invention; (3) invalidity of reissue. The first two defenses may be considered together. Defendant introduced as evidence of the state of the art several patents. Patent No. 5,104, granted to Robert W. Thompson, May 28, 1847, for an improvement in carriage wheels, etc., claimed the rubber tube, a cover of canvas, and an outer casing consisting of two strips of leather, one bolted to the outer side of the felly, and fastened to the other strip by rivets or by strong leather thongs. But neither in the said patent nor in the printed publications filed therewith, describing carriage wheels said to contain modifications of the patented tire, but which show only one inner tube, do I find any anticipation of the Dunlop method of fastening the tire to the wheel. The only method of fastening therein described is by means of bolts with or without a hoop. The Thompson patent was for elastic bearings applied around wheels, and was especially adapted to carriage wheels. The mode of fastening by bolting the leather casing to the tire, with or without the hoop, was merely incidental. The Dunlop patent is for an improvement in the means of securing pneumatic tires to wheels, and is especially adapted to cycle wheels. By the Thompson invention, including herein the modifications shown in the printed publications, the pneumatic tire, as one of the witnesses expresses it, "is bolted or secured to one side of the rim, and the other one (the Dunlop) embodies the rim." The Thompson bolted fastening, by reason of its weight, the projecting bolt heads, its narrower attachments, and lack of adaptation to lateral pressure, could not be successfully applied to a bicycle. Besides, the mode of fastening the leather strips by rivets or thongs would permit the entrance of water and grit, and would render it impracticable.

The essence of Dunlop's invention is the means of uniting a flexible rubber tube by an inflexible jacket to the rim of a bicycle wheel, so that, while rigidity is obtained, elasticity is retained. The tire and the felly were, by this invention, so united, not only to the outer edges of the rim, but, by the canvas flaps, to the inner or hub face of the wheel rim, that the lateral and tangential strain were effectually resisted; and herein is to be found one of the new results of the new application. The carriage wheels of Thompson were not a single pair of wheels, one following the other, guided by the swaying motion of the front wheel from side to side, and therefore they were not protected against such lateral motion. This element is also wanting from the Thomas patents to be hereafter noticed.

But defendants claim that, even if the Dunlop patent was not anticipated, the state of the art was such that it did not require any invention to adapt the known device to the new purpose. They introduced, among others, nine patents for wheel tires, granted in 1889, to A. W. Thomas, of whom they are licensees. But none of the patents therein claimed or suggested for fastening tires to wheels suggested the method or means patented by Dunlop. The patent No. 399,358 described a tire fastened by bands of elastic or pliable material, but the fastening is effected by having the bands circumscribe the surface of the felly of the wheels, and the inventor prefers that they may be made of such material "that they may expand uniformly

with the tube or tire in its inflation." This mode of fastening is open to the very objections, among others, obviated by the Dunlop nonexpansible canvas jacket. It seems to me that the evidence from the patents, as well as from other sources, establishes the fact that the Dunlop patent was the result of inventive skill, and was of great utility. That Thomas could not, with his nine patents, make a practical tire; that the defendants could not and did not make a practical tire until after they had dissected and substantially copied the Dunlop tire; that it is faster than the ordinary tires; that the Dunlop tire was the first one to be commercially adopted; and that the first year after it was put on the market—the season of 1890--91—over 100,000 were sold in Great Britain,—are all facts shown by the evidence. These latter facts, even if the question of patentable novelty were a doubtful one, would go far towards resolving that doubt in favor of the patentee. Loom Co. v. Higgins, 105 U. S. 580; Consolidated Safety Valve Co. v. Crosby, etc., Valve Co., 113 U. S. 157, 5 Sup. Ct. Rep. 513; Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. Rep. 71; Wasburn & M. Manuf'g Co. v. Beat 'Em All Barbed Wire Co., 58 O. G. 1555, 12 Sup. Ct. Rep. 443; Topliff v. Topliff, 59 O. G. 1257, 12 Sup. Ct. Rep. 825; Gandy v. Belting Co., 59 O. G. 1106, 12 Sup. Ct. Rep. 598.

The fifth claim differs from the fourth claim in adding to the combination "an outward protective covering of India rubber, the edges of which are secured to the inner face of the rim, as set forth." In view of the state of the art as shown by the Thompson wheel, described in his patent, and in the printed publications,—the Thomas patents, and especially the Wilkins patent,—I agree with defendant's counsel that there was no invention in adding this covering to the tire in the manner stated. It is undoubtedly useful and necessary to the making of a complete practical tire; but, in view of what had been done before, I think the adding of such a protective covering was a matter of course, and that the particular distance which it extended was not patentable. As the fourth claim is held valid, however, this question is of little importance.

Defendant claims that the Dunlop reissue is invalid for other reasons in addition to those already considered. But since, upon the argument of the case, complainant only insisted upon the infringement of claims 4 and 5 of the reissue, the question of the validity of the other claims need not now be considered. Topliff v. Topliff, 59 O. G. 1260, 12 Sup. Ct. Rep. 825; Fermentation Co. v. Maus, 122 U. S. 413, 7 Sup. Ct. Rep. 1304.

Defendant contends that claims 4 and 5 cover inventions which were not intended to be covered by the original patent, and which, even if made by Dunlop, were only intended to be used in the particular combination claimed in the original patent; that the insertion or retention of the first claim in the reissue is fraudulent, and vitiates the whole patent; that the affidavit of Dunlop of November 24, 1890, in the application for the second American patent was false, and estops him from making under the reissue patent the claims alleged to be new; and that he was guilty of laches in delaying the application for said reissue.

Upon the questions of fraud and estoppel the facts appear to be substantially as follows: In the English patent of 1888, Dunlop claimed a hollow tube or tubes of India rubber for wheel tires. He stated that it was to be surrounded with cloth, canvas, or other suitable material, the latter being covered with rubber or other suitable material to protect it from wear on the "road," and was to be secured to the fellies by a suitable cement or by other efficient means. In the affidavit accompanying Dunlop's application for the original American patent, he swears that this invention is the same as the one patented in England in 1889, and that it has not been patented in any other patent; and in his reissue petition he prays for a reissue of the same invention covered by the original American patent. Defendant contends that claim 1 of the reissue is identical with the claims of the English patent of 1888, and that said affidavit was false, and that said insertion of claim 1 in the reissue was fraudulent.

An examination of claim 1 of the reissue will show to what extent, if any, it embodies the same invention as the English patent of 1888. For the reasons already stated, I shall not pass upon the validity of said first claim of the reissue. But, even if the inventions were identical, I do not find that the reissue was invalidated, or that the statement, if untrue, invalidated the whole reissue. The question of the identity of the inventions claimed in the patents might well have been a doubtful one in the mind of the inventor, and one which he would leave to the judgment of his counsel. There is nothing else in the evidence which supports the claim of fraud.

In November, 1890, when Dunlop made his second application for a patent in the United States, which, it will be remembered, was for substantially the same claims as those of the reissued patent, he swore that his invention had never been patented, with his knowledge or consent, in any country. This statement was manifestly untrue as to part of said claims, for they had been described in the English patent of 1889. Defendant claims that this application and oath constitute an estoppel against Dunlop from making his subsequent reissue application, but I do not find any evidence of the existence of any element of estoppel except the false representation.

But defendant alleges that claims 4 and 5 of the reissue are invalid, because there is nothing in the original patent showing that said patent was intended to include the inventions covered by said claims. I have examined with great care the ingenious and able arguments of counsel for defendant. Without here entering into a discussion of them, I can only say that they have failed to satisfy me either that the invention described in claim 4 was not described in the original letters patent, or that it does not appear therein to have been intended to be secured thereby. The patentee has, it is true, been careless in the preparation and execution of his papers. He has made inconsistent statements, and has apparently misunderstood or misapplied the requirements of the law. He was a foreigner, and he trusted to counsel, presumably learned in patent law, to take the steps necessary to protect his rights. But an analysis of the original patent shows that Dunlop claimed therein to be the inventor of the means for securing an expansible tube by an inexpansible envelope

to the rim of a cycle, embodied in claims 4 and 5 of the reissued patent; and, while he does not swear as to his intention, I think it sufficiently appears from the original patent that he therein intended to secure to himself said invention; and that it further appears from the evidence that the errors in the specifications arose from inadvertence, accident, or mistake, and without any fraudulent or deceptive intention.

I have not overlooked the fact that in said claims in the reissue the protection strips of caoutchouc do not appear, but I do not regard them as essential parts of the combination. They do not involve inventive skill, nor do they affect the operation of the thing invented, except to perhaps prolong its life; and, while the arrangement in defendant's tire for this purpose, whereby the flaps of the nonexpansible jacket are doubled at the point of contact with the rim, seems to me to be an improvement upon complainant's arrangement, yet this improvement is only effected by an appropriation of complainant's invention, the means of securely and firmly maintaining the tire in position on the rim of the wheel. All the authorities are to the effect that where, under such circumstances, the application for a reissue merely seeks to make the claim broader and more comprehensive, it may be granted, in order to secure to the patentee his actual invention, provided he has not been guilty of any inexcusable laches, and no adverse rights have accrued. Miller v. Brass Co., 104 U. S. 352; James v. Campbell, Id. 361; Topliff v. Topliff, 59 O. G. 1261, 12 Sup. Ct. Rep. 825; Rob. Pat. 693.

In this case there were no inexcusable laches on the part of the complainant. As soon as the defects were discovered by him, he used such diligence to correct them that, although he resided in a foreign country, and his counsel resided here, his application was filed in the patent office on January 24, 1891,—4 1-2 months after the date of the original patent. That no circumstance has occurred during this time that would make the reissue operate harshly or unjustly to this defendant is abundantly established by the evidence. The defendant had not invested a dollar in the business at the date of the grant of the reissue; did not obtain a license from the owners of the Thomas patents, the Thomas Company, until six weeks after the reissue was granted. The Thomas Company had never settled on any form of tire as that which they would offer for sale, and they had never sold a single tire. Infringement has not been seriously, and cannot be successfully, denied. Plaintiff's and defendant's tires, when completed, are substantially the same.

Let there be a decree for an injunction and an accounting.