Acheson, D. J.
The bill in this case is founded upon letters patent, re-issue No. 7,583, dated March 27,1877, granted to the complainant, Turner Strobridge, for an improvement in coffee-mills.
The defendants are dealers in hardware at Pittsburgh, Pennsylvania, and bring into the complainant’s market, and sell, a coffee-mill made by Landers, Frary & Clark, of New Britain, Connecticut, which mill the complainant alleges is an infringement of the first claim of his re-issued patent. This clause is in these words: “A coffee or similar mill having a detachable hopper and grinding shell, formed in a single piece and suspended within the box by the upper part of the hopper, or a flange thereon, substantially as and for the purpose specified.”
The defences insisted on, at the argument of the case, may be reduced to two heads, viz.: First, that the mills manufactured by Landers, Frary & Clark, and sold by the defendants, do not infringe the complainant’s said claim; second, that the patent is void for want of patentable invention.
*693 The box of the Landers, Erary & Clark mill, sold by the defendants, is without the usual wooden top. “But the hopper” (to quote the language of the defendant’s expert witness, John E. Earle,) “is cast with a flange projecting from the upper edge, sufficient to cover and form the top of the box; and it is that extension of the hopper, in defendant’s mill, which forms the top of the box.” In no other respect, it-seems to me, does the Landers, Erary & Clark mill differ from the Strobridge mill, (an exhibit of this record,) so far, at least, as concerns the first claim of the patent.
The defendants insist that the phrase “detachable hopper and grinding shell” means a hopper and shell separate and detachable from the top of the box, and that the claim is for a coffee-mill in which the “hopper and grinding shell formed, in a single piece” can be readily detached from the top of the-box in which it is suspended; and therefore, it is argued, the-min sold by the defendants does not contain the combination-set forth in the first claim of the patent, and there is no infringement of the complainant’s rights. But I am unable to-adopt this view. I do not think the word “detachable, ” as used in this claim, necessarily implies that the hopper must-possess the capacity of being detached from the top of the-box. The object contemplated seems rather to be to have a. hopper easily detachable from the box. By the terms of the claim the hopper and grinding shell formed in "a single piece-are “suspended within the box by the upper part of the hopper or a flange thereon.” As respects the width of the-flange there is no express limitation in the specification. In the mill sold by the defendants the hopper is cast with a flange, which projects from its upper edge sufficiently to cover and form the top of the box. This, undoubtedly, is an improvement upon the Strobridge mill, as the same is shown by his drawing, and of which Exhibit “ Strobridge” of this record is a specimen. The flange of the Landers, Erary & Clark mill not only sustains the hopper and grinding shell within the-box, but performs the additional function of serving as a cover of the box. But this improvement does not justify the defendants in appropriating to their use the complainant’s *694 invention, which his patent secures to him. Westinghouse v. The Gardner & Ransom Air Brake Co. 9 O. G. 538; Howe v. Morton, 1 Fisher, 587.
But the defendant alleges that, in view of what was well known prior to the date of the original Strobridge patent, what was dona by him did not constitute such invention as entitled him to a patent, and that his re-issue was therefore void.
It is not denied that prior to the date of the Strobridge invention there existed and were well known in the art, coffee-mills in which the hopper and grinding shell were formed in one and the same piece. This, however, is not claimed as new or patentable, but the claim is limited to a hopper and grinding shell so constructed. If the Strobridge invention was anticipated at all, it was by what is known in this case as the “French mill,” which was imported into this country as early as 1863, and sold to a very limited extent.
This mill is thus described by the defendant’s expert witness, John E. Earle: “I find in the Exhibit French Mill an article known as a box mill, and consisting of a box, with a top made of wood, upon the under side of which a block is glued, so as to extend down into the box when the top is placed on the box. Through the center of the top and block a funnel-shaped opening is made, so that this opening through the top and block forms a hopper, being flush with the upper surface of the top of the box. The top and block being glued together, makes them practically one piece. To the bottom of the hopper and concentric with it the grinding shell is attached.”
After a careful inspection of the “Exhibit French Mill” and “Exhibit Strobridge,” I have reached the conclusion that they differ in important particulars, and that the French mill does not embody the invention covered by the first claim of the conplainant’s patent. The French mill, indeed, has a sunken or suspended hopper, but here, it seems to me, its likeness to the complainant’s invention ceases. The hopper and grinding shell of the French mill are not in one piece. The steel grinding shell is attached to the bottom of the wooden hopper *695 by means of screws. The sunken part of the wooden hopper is glued to the under side of the cover or top of the mill, and the top is nailed and glued to the sides of the box.
Neither in the “French mill” nor in any other mill shown to be in existence prior to the Strobridge invention, is there to be found the combination described in the first claim of the complainant’s re-issued patent, viz.: a coffee-mill having a detachable hopper and grinding shell formed in a single piece, and suspended in the box by the upper part of the hopper, or a flange thereon.”
Some of- the devices entering into this combination, when taken separately and in detail, are old; but this cannot be successfully urged against the validity of the patent. Bates v. Coe, 8 Otto, 31; Williams v. The Rome, W. & O. R. Co. 15 O. G. 653.
The defendants, however, strenuously insist that in view of the state of the art, especially as shown by Exhibit Elevated Hopper Mill, and Exhibit French Mill, the former having the hopper and grinding shell in one piece, and the latter showing a sunken hopper, it did not require invention to make the structural changes recited in the first claim of the Strobridge re-issued patent; but to this I cannot give my assent. To me it seems that the complainant has produced a new and useful mill, differing substantially from any which preceded it, and evincing the exercise of the inventive faculty.
A change in the form of a machine or instrument, though slight, if it works a successful result, not before accomplished in a similar way in the art to which it is applied, or in any other, is patentable. Isaacs v. Abrams, 14 O. G. 861. And the validity of a patent is not determinable by the degree of novelty or invention displayed. The Miller & Peters Mfg. Co. v. Du Brul, 12 O. G. 351. Utility, within the meaning of the patent law, is authoritatively declared to exist “if the combination is new and the machine is capable of being beneficially used for the purpose for which it was designed.” Seymour v. Osborne, 11 Wall. 549.
Applying these principles to the complainant’s re-issued patent, why should it not be sustained ? His combination is *696 new, and, as a result, we have a superior mill, characterized by simplicity of construction and the facility with which its several parts may be set up; and, when finished, compact, convenient and durable.
The merits of the. invention were quickly perceived by the public. The box mills in the general market prior to the introduction of the Strobridge mill had the hopper above the top of the box. Immediately upon the appearance of the complainant’s mill it met with great popular favor and obtained a ready sale. It was accepted and adopted by the trade and went into general use. The Charles Parker Company, of Meriden, Connecticut, and the Peck, Stow & Wilcox Company, of Southington, Connecticut, soon took licenses from the complainant, and these companies — both large manufacturers of coffee-mills — respectively make under the patent the mills known in this case as “Exhibit Charles Parker Mill” and “Exhibit Peek, Stow & Wilcox.”
Nelson H. Camp, agent for the Charles Parker Company, testifies: “Shortly after we commenced selling these mills [Charles Parker mill] in the market we received notice that we were infringing the said Strobridge patent, and, upon investigation, concluded it was so, and took out a license to manufacture under the patent which they granted us under a royalty ; and from that day to the present we have manufactured them very largely. The sale of these mills has been very large as compared with all other mills we manufacture.”
Webster L. Walkley testifies: “I have sold some mills, similar to ‘Exhibit Strobridge,’ manufactured by the Charles Parker Co., and more manufactured by the Peck, Stow & Wilcox Co. * * * From the first introduction of these mills they met with unparalleled success, and the trade who had been purchasing the raised hopper mills, about the corresponding size and price, to a very large degree substituted in their place these sunken hopper mills. So that I should say that the sale of the ordinary raised hopper mill, as sold previous to the introduction of these mills, must have fallen off, in the aggregate, about one-half.”
The letters patent themselves prima facie establish that tho *697 complainant’s improvement is a patentable invention; and strongly confirmatory of this view is the evidence showing the favorable acceptance by the public of the improvement, and its recognition and adoption by the trade as something new and meritorious.
Upon the whole case I am of opinion that the complainant is entitled to a decree.
Let a decree be drawn in his favor.