### STEARNS et al. v. PHILLIPS et al.

*(Circuit Court, E. D. Michigan. July 7, 1890.)*

**1. PATENTS FOR INVENTIONS—WINDOW SCREENS—INVENTION.**
Letters patent No. 328,080, issued October 13, 1885, to John E. Stuart for a window-frame screen consisting of a combination of four bars, each having a longitudinal tongue on one side, and a slot at one end to receive the tongue of the contiguous bar, so that the frame may be adjusted to fit windows of different sizes, is not void for want of invention, though the bars alone are not patentable.

**2. SAME—INFRINGEMENT.**
While the making of such bars is not in itself an infringement of the patent, making them with intent to combine them as in the patented device is an infringement.

**3. SAME.**
Said patent is infringed by a device consisting of four bars, each having a tongue on the inside, and a groove at the end for the reception of the tongue of the contiguous bar, though the groove is made square, so that the tongue fits in it loosely, and the union of the bars is secured by corner pieces.

**4. SAME—PATENTABILITY—EVIDENCE.**
Where the inventive character of a patented device is questionable, the large and increasing sales of the device may be taken into consideration in determining its patentability.

In Equity. On pleadings and proofs.

This was a bill to recover damages for the infringement of patent No. 328,080, issued October 13, 1885, to John E. Stuart, for a window-frame screen. The object of the invention was stated to be "to produce a frame for a window or door screen in which each of the four sides of the same is made of a single stick or strip of wood, and so formed and joined as to be capable of being moved or adjusted upon each other, so as to fit any rectangular opening, as the interior of a window or door frame of a building, whether large or small, within certain limits, and also without regard to the proportion between the length and width of the same; that is to say, the four sticks constituting the frame are shaped and joined so they may be adjusted to correspond to any possible rectangular parallelogram within certain limits as to size." The claims alleged to be infringed are the first and second, which read as follows:

"(1) A frame made up of side pieces or bars, D, joined as shown, each bar being formed with a longitudinal tongue, *a*, at one side thereof, and a slot, *c*, at one end of the bar in line with the tongue; the slots of each bar being of a size to receive and be filled by the tongue of the contiguous bar, substantially as described, and for the purpose set forth.

"(2) A screen-frame composed of side pieces or bars, D, joined as shown, each chamber being formed with longitudinal depressions or rabbets, *d, d*, and tongue, *a*, at one side thereof, and the slot, *c*, at the end of the bar in line with the tongue, the slots of each bar being of a size to receive and be filled by the tongue of the contiguous bar, having an inner depression, *g*, in which to receive the wire cloth or screen, substantially as shown."

The defenses were: *First*, that the patent was void for want of invention; *second*, non-infringement.

*C. W. Smith*, for complainants.

*George H. Lothrop*, for defendants.

BROWN, J. This is a very simple invention, so simple indeed as to suggest a doubt whether it involves any more than the mechanical adjustability of four bars made exactly alike, and each of which, individually and standing alone, is admitted not to be patentable. The popularity of this device, however, as attested by the large and rapidly increasing sales made every year since the patent was issued, induces us to lean towards a construction of the patent favorable to the inventor. The first claim when analyzed is found to consist of a frame constructed of four bars, each of which is formed with a longitudinal tongue upon one side, and a slot at the end, fitted to receive the tongue of the contiguous bar. The second claim is practically the same as the first, the longitudinal depression or rabbet being essential to the production of the tongue, the purpose of which tongue is stated to be to receive the wire cloth or screen. Without the rabbets, there would be no tongue. Hence the first and second claims are practically identical.

It is true the complainants' first original claim was for the bars alone, and that it was rejected upon reference to the Munn patent, and that such· rejection was acquiesced in; but it does not follow that, if these bars were made with the intent that they should be joined together in a window-screen or combined, it would not be patentable. A combination may be patentable though each element of the combination may be old; and we do not see that it makes any difference in principle whether the separate elements are similar to each other or dissimilar, if in combination they produce a novel result. In this case the new product is not a window-screen, but a window-screen which may be made to fit a window of any size. No other window-screen possessing this interadjustability has been shown us. Although this feature is found in one or two other devices, it is accomplished by means so different from those adopted by Stuart that we are loth to deprive him of his claim to the title of inventor.

For instance, the Bacon drawing exhibits a square of parquetry formed of four bars, grooved along both edges, and provided with tenons on both ends; and the drawing shows them put together so that they form a rectangle, the tenons fitting into the groove of each adjoining bar, and the groove also receiving the tenons on the sides or edges of the blocks inclosed within the bars. The bars differ from those of the Stuart patent in having tenons at both ends, instead of a slot at one end, and a long groove upon both sides, instead of a tongue upon one side. While a capability of adjustment follows from the construction of the bars, they are not made with reference to this, but are constructed of a predetermined length, for the purpose of inclosing panels of a given size, and forming a design which is capable of indefinite repetition. The purpose of this construction is to produce an ornamental effect, and a firm interlocking of the numerous panels and bars which constitute the flooring. An essential feature of the Stuart patent,—viz., the longitudinal tongue to which the wire screen is fastened,—is conspicuously absent in the Bacon drawing.

The Prindle patent shows a quilt frame, consisting of four bars, constructed upon an opposite principle to those used by Stuart, in having longitudinal grooves instead of tongues, and terminal tongues or tenons instead of grooves, being similar in this respect to the bars of the Bacon parquetry. The result is a frame adjustable longitudinally only. A lateral adjustment is obtained only by using pairs of end bars of different lengths.

The Munn patent exhibits a window-screen composed of three kinds of bars, viz.: (1) Side bars having tongues on one of their longitudinal sides; (2) end bars which have tongues on one of their longitudinal sides, and grooves in both ends; (3) an intermediate cross-bar, which has tongues on both of its sides, and grooves in both ends.

This structure resembles the Prindle device in permitting a longitudinal adjustment, but there is no provision for a lateral adjustment, except by changing the end bars. Not only are the bars differently constructed from those of the Stuart patent, but the matter of adjustability is not mentioned either in the specifications or claim.

The Blanchard patent for a printer's case undoubtedly contains the element of adjustability, and in this respect it resembles the Stuart patent more closely than any to which our attention has been called; but the means by which this is reached are so different from those employed by Stuart that it can hardly be supposed that he could receive the suggestion of his own method by an examination of the Blanchard patent. The device shows four bars, each provided with a transverse recess for the insertion of another bar, and the outer side of each bar is grooved to receive a key which is driven into the recess for securing them together. These bars do not show a tongue on one of their sides, or a corresponding slot in the end, as required by the Stuart patent. The Blanchard frame is not provided with the means for interlocking the bars which are claimed in the Stuart patent, nor with the depression or rabbet which is one of the elements of the Stuart construction.

The Linscott patent shows a frame in which the bars are joined by mitered joints, and are held together by corner pieces applied to each inner corner of the frame; each corner piece having curved edges, which embrace the moulded portion of the frame bars, and thus secure them together. There is no adjustment of tongue and groove as in the Stuart patent. In the Brent patent the bars are also held together by metallic corner pieces. While they have the longitudinal tongue, they have no end groove, and therefore cannot be put together in the manner shown in the Stuart patent. Upon the whole, we think there is a patentable novelty in the Stuart device, although the scope of the invention is undoubtedly a narrow one.

The bars used by the defendants are also alike, all having a long T-shaped tongue upon the inside, and a groove at the end, for the reception of the tongue of the contiguous bar. In the earlier device, known as the "1888 Pattern," the end grooves are also made T-shaped, to hold the tongue firmly; but in the later device, known as the "1889 Pattern," this groove is made square, so that the tongue fits loosely. In both cases

the union of the bars is secured by corner pieces having T-shaped grooves, in which the tongue slides, and the bars are thus held firmly together without the aid of the end grooves. The longitudinal tongues form a depression or rabbet around the inner edge of the frame in which the wire cloth is secured as in the Stuart patent, and is thus countersunk into the frame, so that its edgings and fastenings are not exposed. Both of the defendants' devices contain the elements of the Stuart patent, with the addition of the corner pieces, which are unnecessary in the heavier and more accurately fitting construction of the Stuart device. The loose action of the tongue and groove in the 1889 pattern is obviously intended as an evasion of the requirement of the complainants' claims that the slot of each bar be of a size to receive and be filled by the tongue of the contiguous bar, and is evidently relied upon to relieve defendants in case the 1888 pattern be held an infringement.

The only real deviation in either of these devices from the Stuart pattern is in the transfer of the strain of the connection from the groove in the end of the bars to the grooves in the corner pieces. This introduction of corner pieces may enable the defendants to give their bars a somewhat lighter construction, but it is rather an addition to than a deviation from the complainants' patent. Indeed, as defendants' expert argues, "the bars are just as firmly joined together if the slots upon the end of the bar were entirely wanting," and, further, "that the bars depend entirely upon the corner pieces, as a necessary element to join them." In these devices the defendants have unquestionably seized upon the two leading features of the Stuart patent, viz., the longitudinal tongue, to which the wire cloth is attached, and the grooves at the end of the bars, through which the longitudinal tongue is allowed to run, and which secures the important feature of adjustability. While defendants may have the right to make these bars, if they manufacture them with the intent that they shall be put together in the form of window-screens, they are liable as infringers. Walk. Pat. § 407.

Should the defendants omit this groove altogether, as they appear to have done in some cases, a much more serious question would arise, but one we do not feel called upon to consider here. We think complainants are entitled to a decree for an injunction, and for the usual reference to a master to compute damages.