## NATIONAL CO. et al. v. BELCHER.

### SAME v. MORSE et al.

#### (Circuit Court, E. D. Pennsylvania. June 25, 1895.)

#### Nos. 34 and 2.

1. PATENTS—INVENTION AND ANTICIPATION.

    A construction which had been very nearly approached but never reached by prior inventors *held* to be patentable, in view of the facts that it met a recognized want and was extensively adopted, and that the patent had long been acquiesced in by the trade.

2. SAME—DAMAGES AND PROFITS—NOTICE OF PATENT.

    There can be no recovery for damages, and no accounting for profits, where complainant has failed to allege either that the patented devices were marked "Patented," or that actual notice of the patent was given to defendants, as required by Rev. St. § 4900. Dunlap v. Schofield, 14 Sup. Ct. 576, 152 U. S. 244, followed.

3. SAME—INVENTION—MECHANICAL SKILL—ANTICIPATION.

    Where a prior patent was placed in the hands of a machinist and model maker, with instructions to show a certain modification indicated in the specification thereof, and from the drawings and specifications he constructed a model fully disclosing the invention claimed by the patent in suit, testifying that he experienced no difficulty in doing it because the drawing and specifications made it plain, *held*, in the absence of contrary evidence, that this showed that only mechanical skill was required to produce the device of the patent in suit.

4. SAME—ELEVATOR PUMPS.

    The Hinkle patent, No. 183,055, for an improvement in air chambers for forcing water for operating elevators, construed, and *held* void by reason of anticipation.

5. SAME—ELEVATORS.

    The Otis patent, No. 228,107, for regulating the motion of elevators and preventing accidents, *held* valid and infringed as to claims 3, 4, 6, and 7.

6. SAME—ELEVATORS.

    The Reynolds patents, Nos. 317,202, 456,122, and 458,917, for devices for controlling the operation of elevators, *held* void,—the first as to claim 1, the second as to claims 1 and 2, and the third as to claims 2 and 3.

These were bills by the National Company and Otis Brothers & Company against Thomas H. Belcher, and against Edwin F. Morse and Carlton F. Williams, respectively, for infringement of certain patents relating to elevators.

Edwin H. Brown and J. H. Raymond, for complainants.

Ernest Howard Hunter, for defendants.

DALLAS, Circuit Judge. In pursuance of a stipulation filed, these two cases have been heard together, and upon the same proofs. They each involve the same five patents.

1. The patent to Philip Hinkle, No. 183,055, dated October 10, 1876, is for "improvement in air chambers for forcing water for operating elevators," etc. The claim in question in this suit is as follows: "(1) In an hydraulic hoisting device, an air and water chamber, A, interposed between and communicating with the elevator cylinder and a pressure generator, substantially as described." In the specification it is said: "I may employ a pump, or such construction that when there is a determined amount of pressure in the chamber A the pump shuts off, but when the pressure lowers

the pump again starts." This is the only mention which is anywhere made of any particular kind of pump or construction, and it amounts to nothing more than a suggestion which may or may not be followed. Complainants' expert says that "the patentee proposes to provide the pump of such construction that a determined amount of pressure in the tank chamber, A, will automatically stop the pump, the pump being started again when the pressure in the chamber becomes lower"; but for this statement there is no other foundation than the language which I have quoted from the specification. Whether the patentee, if he had in his claim specifically designated the automatically acting pump here referred to, would have strengthened his position is at least doubtful; but, as it is very plain that the claim does not call for any peculiar form or construction of "pressure generator," inquiry as to whether a claim so constructed might have been made and sustained would be profitless. As it stands, this claim has been met by overwhelming evidence of anticipation, and therefore I am constrained to hold that it is invalid.

2. The patent to Charles R. Otis, No. 228,107, dated May 25, 1880, is for an invention which, as stated in the specification, "consists in means * * * for preventing accidents from the breaking or slipping of the hoisting rope of an elevating apparatus, or from the cage acquiring an undue velocity from any cause, the invention further consisting in means for automatically restoring the parts to an operative position after the movement of the cage has been arrested or reduced." Four of the seven claims of this patent are involved. These are as follows:

"(3) The combination, with an elevator cage having appliances for arresting or retarding the movement thereof, of mechanism for throwing said appliances into operation on an undue increase of speed, and devices for automatically restoring the said appliances to their first position as the speed is reduced or motion arrested or reversed, substantially as set forth. (4) The combination, with a cage and its arresting appliances, of the cable, k, connected thereto and traveling therewith, governor operated by said cable, a clamp operated by the governor to automatically grip and release the cable, substantially as set forth." "(6) The combination of the cage, its detents, the cable, k, and its retarding appliances, and the spring interposed between the operating arm of the stopping or retarding devices, and a bearing on the cable, substantially as set forth. (7) The combination of the cage, its arresting devices, operated from a crank or arm, a cable traveling with the cage and connected to said arm, governor operated by the movement of the cable, and jaws arranged adjacent to the cable, to act directly thereon, and connected to the governor, to be opened and closed thereby."

The 10 prior patents discussed by the learned counsel of the defendants have been carefully examined. They certainly do show that before this Otis patent was applied for much thought had been directed to securing safety in the operation of elevators, and that the trend of the inventive efforts of others had been in the same general direction as that of Mr. Otis. His construction, however, though very nearly approached, had never been reached, and upon its introduction the contrivance of the patent in suit was adopted in preference to anything which had preceded it, and was and is largely used. His achievement, now that it has been realized,

may not appear to have been a very difficult one to accomplish, but that it met a recognized want, and was regarded as being new as well as useful is quite persuasively shown by its extensive adoption and the prolonged acquiescence of the trade in his monopoly. The claim which is most seriously attacked is the third, and the reference by which that attack is most plausibly maintained is to a patent issued to John Fensom, No. 151,014, dated May 19, 1874, for "improvement in elevators." But by that patent, although its appliances for arresting the movement of the cage may, after service, fall out of operative position, there are disclosed no "devices for automatically restoring the said appliances to their first position as the speed is reduced or motion arrested or reversed," and the employment of such devices constitutes a material element of the third claim of the patent in suit. Infringement has been clearly shown. These are all combination claims, and though some of the corresponding parts in the respondents' arrangement are not precisely identical with those of the patent, yet it is obvious that they have the same purpose in the combination, and effect that purpose in substantially the same manner. Upon the authority of Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, I sustain the point made for respondents, that "there can be no recovery for damages and no accounting for profits, because the complainant has failed to allege in the bill of complaint either that the patented devices were marked 'Patented,' or that actual notice of that fact was given to the defendants, as required by section 4900, Rev. St." In Allen v. Deacon, 21 Fed. 122, it was held, in a suit in equity, that, in the absence of marking or notice, neither damages nor profits can be recovered.

3. The patent to George H. Reynolds, No. 317,202, dated May 5, 1885, is "for means for controlling the operation of elevators." The only claim involved in this suit is as follows:

"(1) The combination, with the car or cab and its controlling valve, of a lever or hand gear on the car or cab, and occupying a stationary position relatively thereto as it travels, sheaves, g g¹, and bearings therefor arranged at the bottom of the shaft and adapted to move upward and downward, other sheaves, h h, at the top of the shaft, flexible connections passing around these sheaves from the top to the bottom of the shaft, and connected at their one end with the said lever or hand gear on the car or cab, and connections between the valve and the movable bearings for the sheaves, g g¹, at the bottom of the shaft, through which the movement of the lever or hand gear on the car and the rising movement of one or other of the sheaves, g g¹, will effect the shifting of the valve, substantially as herein described."

This claim was before the circuit court for the Northern district of Illinois, in the case of Crane Elevator Co. v. Standard Elevator Co., but the opinion filed by that court is silent upon the question of the patent's validity. That question is therefore an open one, and, as such, has now been considered. It is, however, unnecessary to discuss the evidence bearing upon it, except as it relates to a single matter upon which I have reached a decisive conclusion. A German patent, No. 18,400, to D. Lampe, for "gearing for lifts," published June 3, 1882, contains this statement: "For moving cocks, valves, slide valves, pistons which have not a tendency to go into

FEDERAL REPORTER, vol. 68.

the cut-off position, the mechanism is doubled, whereby the loose rollers are set upon a two-armed lever, which then can act directly as cock key or beam." That patent was placed in the hands of a machinist and model maker, with instruction "merely to show, by the construction of a model, a modification, as described, of a double endless rope to operate the model as described in the specification, according to his judgment, as therein described; only to show the operation of the modification of doubling the hand rope to move stop valves or other devices at the bottom of the shaft, as described in the specification." He had no further instructions, and received no drawings other than those which accompanied the Lampe patent; and, upon information derived wholly from that patent and the specification annexed to it, he constructed a model which fully discloses the invention claimed in the claim in suit. The learned counsel for the respondents contend that it is impossible that this model could have been produced by the exercise of mechanical skill merely, and with no other instructions than to illustrate the modification suggested by Lampe, comprising double cables; and that, therefore, either the testimony to that effect is false, or else that the person by whom the model was made also made the same invention that Reynolds had made. I cannot accede to this. The evidence of the model maker is not controverted otherwise than by argument, and is supported by the testimony of other witnesses. The ability he displayed in making this model may astonish the unskilled, but, in view of the positive and uncontradicted evidence, it cannot be regarded as transcending possibility; and that it was not inventive in character is, I think, placed beyond question by his own testimony that he "did not experience any difficulty in the mechanism; the drawings and specifications made it plain." That he had, himself, made some inventions is true; but in doing this piece of work he was, as he tells us, a mere imitator; the drawings and specifications of Lampe, not his own inventive faculty, supplied all that was requisite for his purpose. The necessary result is that the Lampe patent must be regarded as establishing that the first claim of the Reynolds patent, No. 317,202, is void for lack of invention and patentable novelty of its subject-matter.

4. The patent to George H. Reynolds, No. 456,122, dated July 14, 1891, is for "controlling device for elevators." Its two claims, both of which are involved in this suit, are as follows:

"(1) In a controlling device for elevators, the combination of a car, two cables attached positively at each of their ends to travel with the car, and connected with the controlling device, and an operating device upon the car to positively take up and pay out said cables to shift positively the controlling device, substantially as set forth. (2) In controlling devices for elevators, the combination of a car, traveling cables connected positively at each of their ends to the car, and passing over stationary pulleys at one end of the well, and around movable pulleys connected to the controlling device at the other end of the well, and means for positively contracting and relaxing the bights of the cables, substantially as set forth."

These claims were adjudged to be valid by the circuit court in Illinois in Crane Elevator Co. v. Standard Elevator Co., supra, but

I believe that if the additional evidence which has now been adduced had been submitted to that court, its decision would have been different. The Lampe patent was produced in that case, but the model made thereunder, which I have already discussed, was not presented. This new matter is applicable to patent No. 456,122 as well as to patent No. 317,202, and, as it shows that the Lampe patent supplied all the information necessary to enable a skilled mechanic to do all that was claimed by Reynolds in patent No. 456,122, it is a complete anticipation of that patent also.

5. The patent to George H. Reynolds, No. 458,917, dated September 1, 1891, is for "controlling device for elevators." Its second and third claims are involved in this suit, and are as follows:

"(2) In an elevator control, mechanism having two control cables attached to and running with the car, in combination with yieldingly supported pulleys, as F F, adapted to rise and fall together, substantially as described. (3) In a cable-operating mechanism for elevators comprising two control cables attached to the car, a weighted lever having sheaves, over which the cables run, for regulating and maintaining the tension of the cables, substantially as shown and described."

This patent, as to its claims 1 and 3, was adjudged invalid by the circuit court for the Northern district of Illinois, in another case between the Crane Company and the Standard Company. Claim 2 was not considered; but, if the first and third claims are invalid, it would seem that the second must necessarily be so. The brief of complainants appears to impliedly concede this, but insists that this case "is much stronger than the former case." As respects the argument and manner of presentation this may be so, but if any new evidence has been introduced here, which would, if presented in the Illinois case, have affected its decision, it has not been pointed out, and I have not observed it. Therefore, following the judgment I have referred to, and without expressing any independent opinion, I hold that this patent is invalid.

Let a decree be prepared in accordance with this opinion in each case.