### COFFIELD MOTOR WASHER CO. v. A. D. HOWE MACH. CO.

(Circuit Court, N. D. West Virginia. June 27, 1911.)

**1. PATENTS (§ 35*)—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.**

The widespread commercial success of a patented device should be taken into consideration in determining the question of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*

Utility, extent of use, and commercial success as evidence of invention. see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

**2. PATENTS (§ 16*)—INVENTION—EVIDENCE TO NEGATIVE INVENTION.**

A combination patent for an article, which, when constructed in accordance with the specifications, has proved a great commercial success, may not be held devoid of invention because the patentee may not have known all of the forces which he had brought into operation.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 16.*]

**3. PATENTS (§ 35*)—EVIDENCE OF UTILITY OF DEVICE.**

The utility of a patented device may be attested by the litigation over it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*]

**4. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WATER MOTOR.**

The Coffield reissue patent, No. 12,719 (original No. 806,779), for a water motor, is within the scope of the original patent, was not anticipated, and discloses novelty and invention, the device having achieved immediate and great commercial success, and its utility being attested by numerous suits for its infringement; also *held* infringed.

5. PATENTS (§ 283*)—REISSUE—INTERVENING RIGHTS.

A corporation organized for the purpose of pirating a patented device of complainant through the knowledge acquired by one of its incorporators while in complainant's service cannot set up intervening rights to invalidate a reissue of the patent.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 283.*]

In Equity. Suit by the Coffield Motor Washer Company against the A. D. Howe Machine Company. On final hearing. Decree for complainant.

See, also, 172 Fed. 668.

Richard J. McCarty, for plaintiff.

H. E. Dunlap and John J. Coniff, for defendant.

DAYTON, District Judge. For the fourth time I am now called upon to pass upon the validity of complainant's reissue letters patent No. 12,719. In the case of Peter T. Coffield & Son v. Spears & Riddle (C. C.) 169 Fed. 641, the patent is fully described. In that case I considered the questions of infringement, the state of the prior art, the alleged irregularities in the Patent Office in the issue of the original and reissue patents, and whether the reissue was an unwarranted expansion of the original patent. I there determined that in his motor "Coffield, the patentee, was the first to use, in connection with the elements of the mechanism, springs which complete the stroke of the valve, and that, taken as a whole, the device is new, useful, and patentable." I called attention to the fact that the board of appeals in the Patent Office had twice considered this patent and sustained it. After this case had been so determined by me upon full hearing, this suit was brought, and the validity of this patent has been again very bitterly contested. The complainant filed its bill and the defendant an "answer and cross-bill." Affidavits were filed by both, and on September 8, 1909, I passed upon the motion for preliminary injunction, filing an opinion which will be found in 172 Fed. 668. The defenses set forth in the original answer were the same as those made in the Spears & Riddle Case, and in this second opinion, after careful reconsideration, I confirmed my rulings in the Spears & Riddle Case as to the novelty and patentability of the Coffield device, as to the alleged irregularities in the Patent Office in the issue of the original and reissue patents, and found that the defendant company was infringing such reissue patent. After the preliminary injunction had been granted, by order entered, a time agreed upon by the parties was fixed within which to take proofs and mature the cause for final hearing. After complainant had taken its testimony in chief, the defendant claimed to have discovered for the first time the existence of what is known as the Bergstrom and Hayes patents. Thereupon, without taking any testimony in rebuttal, the defendant appeared before this court with certain affidavits, setting forth the Bergstrom and Hayes patents, and alleging that they were prior anticipations of the Coffield patent, moved this court upon such affidavits to dissolve the preliminary injunction. Upon hearing of this motion it was overruled, I holding that such defense, having arisen after the taking of complain-

ant's testimony, would have to be presented formally by proper pleading and made out by independent proof by the defendant, and, in order that this might be done, the court allowed the defendant to file an amended answer, setting up in defense these patents. Two exceptions were taken to the amended answer so filed, and leave was asked by defendant to recross-examine one of complainant's witnesses. In passing upon these matters I again considered the case, and filed on June 11, 1910, a memorandum opinion (not published) sustaining the exceptions to the answer and overruling the motion for leave to recross-examine. By this action the issue was finally narrowed down to the question of whether the Bergstrom and Hayes patents were prior anticipations of the Coffield one, rendering it void. In the very recent case of the Diamond Rubber Company of New York v. Consolidated Rubber Tire Company et al., decided April 10, 1911, 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527, dated May 15, 1911, the Supreme Court has held:

[1] (1) The widespread commercial success of a patented device should be taken into consideration in determining the question of invention.

[2] (2) A combination patent for an article which when constructed in accordance with the specifications has proved a great commercial success may not be held devoid of invention because the inventor may not have known all of the forces which he had brought into operation.

[3] (5) The utility of a patented device may be attested by the litigation over it.

These propositions have been repeatedly maintained and upheld in a vast number of patent cases, among which are: Gandy v. Main Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Holmes v. Truman, 14 C. C. A. 517, 67 Fed. 542; Davis v. Parkman, 18 C. C. A. 398, 71 Fed. 961; Strobridge v. Lindsay (C. C.) 2 Fed. 692; Washburn & Moen Mfg. Co. v. Haish (C. C.) 4 Fed. 900; Wilson Packing Co. v. Chicago P. & P. Co. (C. C.) 9 Fed. 547; Lindsay v. Stein (C. C.) 10 Fed. 907; Miller v. Pickering (C. C.) 16 Fed. 540; Washburn & Moen Mfg. Co. v. Grinnell Wire Co. (C. C.) 24 Fed. 23; Hill v. Biddle (C. C.) 27 Fed. 560; Guarantee T. & S. Deposit Co. v. New Haven Gaslight Co. (C. C.) 39 Fed. 268; Chicopee Folding Box Co. v. Nugent (C. C.) 41 Fed. 139, affirmed in American Paper Pail & Box Co. v. National Folding Box & Paper Co., 2 C. C. A. 165, 51 Fed. 229; Stearns v. Phillips (C. C.) 43 Fed. 792; Featherstone v. George R. Bidwell Cycle Co. (C. C.) 53 Fed. 113; Lalance & Grosjean Mfg. Co. v. Haberman Mfg. Co. (C. C.) 53 Fed. 375; National Co. v. Belcher (C. C.) 68 Fed. 665; Brownson v. Dodson, etc., Co. (C. C.) 71 Fed. 517; Kalamazoo Ry. Supply Co. v. Duff Mfg. Co., 51 C. C. A. 221, 113 Fed. 264; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 106 Fed. 693; Kinloch Tel. Co. v. Western Electric Co., 51 C. C. A. 369, 113 Fed. 659; O'Rourke Eng. Const. Co. v. McMullen, 88 C. C. A. 115, 160 Fed. 933; Beckwith v. Malleable Iron Range Co. (C. C.) 174 Fed. 1001.

[4] In view of these principles, it is entirely proper in solving the question of whether these Bergstrom and Hayes patents forestalled the Coffield one to consider the situation of the parties as disclosed by this record. It seems that Coffield, after securing his patents for his water motor, applied it in use to the manipulation of washing machines. This application could be very easily and quickly made. Its power could be supplied by attachment by rubber hose to any ordinary water faucet. By reason of its internal mechanism, it mattered not whether the water pressure thus afforded was high or low. This use practically dispensed with, and to a great extent superseded, hand manipulation of these washing machines. It became a great commercial success, and it is stated that several hundred thousand of them have been installed in the homes of this country.

Ornold was a selling agent of the Coffields, and as such became thoroughly familiar with this motor, its mechanism, its achievements, and its popularity. He left their employ and associated himself with Howe, and they two set to work to devise a motor that would perform the same functions as the Coffield one without infringing its patent. They admit two failures in attempts to accomplish this, and their third one, which is charged in this suit to be an infringement, I do not find the least trouble in ascertaining to be so for the reasons set forth in my former opinion in this case. But they were not alone in their effort to secure a share of profit derivable from the manufacture and sale of this popular motor applied to this use of manipulating washing machines. It appears from the record that the Coffield Company and its predecessors have been compelled to prosecute suits for infringement against Hax and Davidson in the Southern District of Ohio, against Spears and Riddle in this district, and against the Blackstone Manufacturing Company in the Western District of New York. It may therefore be conceded that all the presumptions arising in favor of an invention from its widespread commercial success and of its utility, as attested by the litigation over it, attaches to this Coffield motor patent.

How about the Bergstrom and Hayes patents? The Bergstrom issued from the United States Patent Office February 15, 1876, No. 173,579, and was reissued as No. 8,120 on March 12, 1878. The Hayes is an English patent No. 2,644, issued July 10, 1877. The Bergstrom original is therefore 35 years, the reissue 33, and the Hayes 34 years old. The Bergstrom is solely for "Improvement in Piston Water Meters," the Hayes for "Liquid Meter or Water-Power Engine." Bergstrom clearly never contemplated the use of his device as a motor having power to manipulate other machinery, but his clear and sole purpose was to invent an accurate measurer of water as it flowed through the pipes to which it was to be attached. It was not practical and accurate for this purpose, as all the experts substantially agree, and its "double use" as a power motor was not thought of. So, as far as disclosed, it was never accepted or used commercially for any purpose. So, too, the Hayes patent was designed as a liquid meter, although Hayes had a vague and hazy idea of its use as a water power engine, as he says: "And for transmitting power or as a motor the apparatus

thus constructed may sometimes be used." So far as disclosed, it was never accepted or used commercially for any purpose. So completely did these patents sink into oblivion that they were not discovered until after the Coffield patent had been twice approved by the board of appeals in the Patent Office, by this court in the Spears & Riddle Case, and were not pleaded in this case until the time fixed within which to take the testimony had expired. The fact, on the other hand, that the Coffield device received prompt recognition and commercial success raises at least a very strong presumption under the rulings in the cases we have above cited against the contention that these Bergstrom and Hayes patents were prior anticipations of it. Indeed, some of the cases seem to go so far almost as to hold that such evidence is conclusive against such contention. Certain it is that common experience teaches us that very often two mechanical devices are very similar in construction and design, yet one turns out useful, practical, successful, while some defect somewhere in the other quarrels with its other parts, and sends it to the scrap heap. I have compared these patents very many times, and have studied the devices represented by them long and earnestly, and I have been driven to the conclusion that the essential difference between the Bergstrom and Hayes on the one side and the Coffield on the other is that the valves of the two first operate alike in a single movement by the elastic force of the springs, while the Coffield takes the vital "last step beyond," and secures two movements, the initial one which unseats the valves against heavy pressures holding them on their seats, the other accomplished by the elastic pressure of springs acting upon the valves at the moment they are unseated, whereby, after they are relieved of pressure, a final movement is secured by which the valves at each end of the piston stroke are reversed, and the motor continues in operation. The single movement secured by the Bergstrom and Hayes, it seems to me, may be subject to uncertain contingencies. For example, Hayes in his patent says:

"Inclined studs $p$ on the piston heads serve as bearings for the ends of latches when the piston reaches either end of its stroke, and by elevating the latches release the valve stems which are then suddenly and forcibly thrown inward, readjusting the valve and reversing the movement of the piston.".

Bergstrom accomplishes a single movement by the force of the spring in the same way. Defendant's expert, Coombs, admits this. Does not this "sudden and forcible" throwing inward of these valves imply constant wear upon the valves and their seats? In such operation are not the springs overworked? Under very heavy pressure are they not liable to break? If they are made extra strong, are they not liable under very light pressure to be too unyielding? According to complainant's tests touching these questions, where a water pressure of 150 pounds is used, a spring tension of 49.90 pounds would be produced, and a blow of 49.90 pounds would be inflicted by the valves upon their seats by reason thereof. This would certainly rapidly destroy the valve and weaken the springs, to say nothing of the liability to constant breakage. On the other hand, by the double movement involved in Coffield, the valves are unseated by first a rigid means

such as the cylinder heads which initially unseat the valves against heavy pressures yet holding them on their seats, the heavy pressures thus removed, the elastic spring pressure that moment operates to impart a final movement whereby the valves are reversed.   In this case the spring tension, no matter whether the water pressure be 15 or 150 pounds, it is stated by complainant's expert witness Wagner never exceeds 3 pounds, and the valves are protected from the "sudden and forcible" throwing inward against their seats.   It is for these reasons very clear to me that the Coffield is an advance in the art far beyond either the Bergstrom and Hayes, and it is reassuring to me that my able brother, Judge Hazel of the Western District of New York, in considering this same question in the Blackstone Case, upon application for preliminary injunction, has arrived at the same conclusion.   The other questions so extendedly argued by counsel need but little consideration.   The effort to establish fraud in the proceedings in the Patent Office upon the Coffield reissue in my judgment has utterly failed in both proper pleading and proof.   As I have in my former opinion herein pointed out, such defense cannot be made upon the ground of mere irregularities, but actual fraud must be clearly shown.

[5] As to defendant's claim of intervening rights accrued between the issue of the original and the reissue patents, I have found nothing to change my former judgment that such claim cannot be upheld, first, because this defendant company, organized by Ornold and Howe, is in no position to set up such a claim, seeking as it did, through Ornold's knowledge of Coffield's invention acquired as a Coffield selling agent, to pirate it, second, because I think complainant's reissue patent, as held by me in the Spears & Riddle Case, comes clearly within the rules laid down in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, and is fully protected as of the date of the original patent against all intervening rights.

The injunction must be perpetuated and an accounting awarded.