**ALBERGER GAS ENGINE CO. v. ROSS HEATER & MFG. CO., Inc., et al.**

(District Court, W. D. New York. August 28, 1922.)

1. Patents ⬤⟶328—Reissue 14,906, for expansion joint, valid and infringed.

The Bogart reissue patent, No. 14,906 (original No. 1,319,457), for improvement in expansion joints, *held* valid and infringed as to claims 1, 2, 4, 5, and 6.

2. Patents ⬤⟶328—1,336,924, for expansion joint, not infringed.

The Ruppel patent, No. 1,336,924, for expansion joint, claims 1 and 2, *held* not infringed.

In Equity. Suit by the Alberger Gas Engine Company against the Ross Heater & Manufacturing Company, Inc., and Scott C. Ross. Decree for complainant.

John S. Powers, of Buffalo, N. Y., for plaintiff.
J. William Ellis, of Buffalo, N. Y., for defendants.

HAZEL, District Judge. In this case infringement is charged of complainant's reissue patent No. 14,906, granted July 6, 1920, to John A. Bogart, on application filed May 20, 1920, for an improvement in expansion joints, pursuant to original patent No. 1,319,457, of October 21, 1919, on application dated September 3, 1915. Defendants in answer challenge the validity of the reissue, deny infringement, and counterclaim that complainant infringes claims 1 and 2 of their patent No. 1,336,924, for expansion joint, of April 13, 1920, on application of March 10, 1915, which they say was a continuation of an original application filed by Richard Ruppel on February 8, 1913. Complainant maintains that Ruppel's original application was abandoned, and that after an interference in the Patent Office between the respective pending applications, wherein priority of invention was awarded to Bogart, Ruppel, the defeated party, then ex parte presented broader claims in a second application for patent, which were erroneously allowed, than were warranted by the interference proceedings. It will be convenient to treat of the two causes separately: First, as to the validity and infringement of complainant's patent by defendants; and, second, as to defendants' patent and their counterclaim.

[1] Expansion joints or pipe couplings are commonly used in connection with steam pipes, water pipes, and the like, and are placed at intervals in the line of pipe, so as to allow axial movement of the adjoining sections. They were improvements of the slip tube joints,

which were in general use long before the conception of either complainant's Bogart or defendant's Ruppel patent. The patentee, Bogart, by his invention, designed to improve expansion joints by supplying a support of the joint and pipe to secure in the main easy and quick adjustability of the packing without dissembling the parts of the expansion joint. The specification states the object of the patent as follows:

"Prevention of pulling apart of the slip joint under conditions of extreme pipe contraction or improper assembling or adjustment of parts in setting up; the provision of a joint which may be adjusted readily in assembling, readily disassembled, repacked, etc., without any disturbance of the line piping."

Slip joints of the old Crane type, which had become standard, often leaked, and the pipe became distorted, unless provision for guiding it just ahead of the joint was made. The distortion of the line distorted the slip collar of the joint and rendered it practically inoperative. Variations in the length of the pipe often resulted from changes in the temperature and from pressure of the fluids, gases, or steam conveyed, and hence it was necessary to provide for free expansion and contraction of the piping. In the old slip joints packing would often become impaired, due to the latent stresses to which the pipe was subjected, with the result that in a very short time the pipe would leak, and thus its utility became impaired. But it is not claimed by either of the patentees herein that they were the first to guide or support the old slip joint, for the prior patents to Pearce and to Tyler show such structures, and, though they were improvements, they did not wholly remove the difficulties of which the skilled workmen complained.

Complainant and defendants each claim that their respective adaptations and details of construction overcame the difficulties. The patentee, Bogart, describes and claims a quick external adjustability of the packing, as distinguished from one necessitating removing bolts and nuts or parts from within an open guide sleeve, such as in Ruppel's early disclosure. He says that by the guide sleeve of his patent he obtains a ready access to the nuts and bolts of the packing gland, thus affording convenient and quick access to the gland and replacement of packing, without disconnecting or displacing any other parts, and, furthermore, that by his stop means the pulling apart of the joint by undue contraction or expansion is prevented. His expansion joint is differentiable from the prior unguided joints by a guide sleeve separately attached to the casing, in combination with the packing gland means for external adjustment of the gland, a proper alignment, and a better longitudinal movement of the pipe in its expansion or contraction. The specification states:

"Since the guide sleeve 12, except for the improvement now stated, would, if made of imperforate construction, as shown and preferred, so inclose the gland bolts that the guide sleeve would have to be removed to adjust the gland, and since such removal not only would make the adjustment more laborious, but would necessitate such adjustment at the time when the support of the guide sleeve was removed, so that the adjustment might occur with the parts out of perfect alignment, I provide the main body 7 with the offsets 13, which are bored to receive the gland bolts 14, which have their nuts abutting these offsets, and thus outside the guide sleeve, so that the packing may be adjusted by the gland at any time without removal of the guide sleeve and while the parts are held by the guide sleeve in perfect alignment."

This is well explained by expert witness Dorsey, who testified that by tightening the nuts abutting the offsets the gland is drawn against the packing, and the packing is tightened or adjusted; the parts meanwhile being held in alignment.

The patent has eight claims, of which 1, 2, 4, 5, 6, and 7 are involved herein. Claims 1 and 2 of the original patent, corresponding exactly to claims 1 and 2, of the reissue were in interference with Ruppel's second application—the application for the patent subsequently granted to him after amendments were inserted, and claimed to be infringed by complainant. Claim 1 of the reissue, which is typical of claims 2, 4, and 5, reads as follows:

"1. In combination with two sections of a pipe line a casing attached to the end of one pipe section, a tubular member on the end of the other pipe section and slidably disposed in said casing, an annular head on said tubular member, and a sleeve secured to said casing and extending over said head to form a protective chamber in which the sliding surface of said tubular member is disposed."

The element of a guide sleeve arranged to form a protective chamber clearly refers to a construction with a closed sleeve to protect the joint, in contradistinction to one that is open, and through which the gland bolts are manipulated. The original specification, page 2, lines 5 to 21, and the statement that the patentee does not limit himself to the specific construction, negatives, I think, a limitation of the original claims to an absolutely closed sleeve or one that is imperforate; nor, indeed, does the prior art demand a narrow scope, or one that would serve to exclude an obvious evasion. It was not necessary to have an imperforate guide sleeve to attain the object of the invention. In the argument submitted to the Court of Appeals for the the District of Columbia in the interference proceeding there were statements to the effect that the closed cylindrical sleeve of the original patent was of the essence thereof; but in my opinion no such interpretation was in the minds of the Patent Office officials who distinguished the construction from Ruppel's 1913 disclosure, and they did not expressly limit the guide sleeve to a precise form. The decisions with which I am in agreement emphasize that in Bogart's construction a closed cylindrical sleeve is permitted (not required), while in Ruppel's disclosure an open or cage-like or guide sleeve to reach the nuts and bolts of the gland to obtain operativeness was absolutely necessary. No such necessity exists in Bogart's device. It was difficult to adjust the gland through the small apertures provided by the Ruppel disclosure. His guide, with its openings or slots, was not separate from the casing or removably connected therewith, and hence the packing gland could be reached only through the openings and from the inside of the chamber provided by the guide sleeve. Bogart retained the protective chamber by his form of closed sleeve, but adjusted the gland and removed and replaced the packing from the outside, using offsets and through bolts to accomplish his purpose. It was suggested that in Ruppel's original application it was stated that the guide sleeve may or may not be open or slotted; but this is thought merely a bare statement, because a closed guide sleeve in his expansion joint would not have been completely operative, owing to the manner in which the bolts and nuts were placed on the

inside flange or gland surrounding the pipe. The claims 1 and 2, however, must be limited to a separable guide sleeve attachment for forming a sliding joint, to escape anticipation by Ruppel's earlier application.

Claims 6 and 7, which were added by the reissue, when limited to the specific means for adjusting the packing, were not, in my opinion, an enlargement of the original patent. They read as follows:

"6. In combination with two sections of a pipe line, a casing attached to the end of one pipe section and recessed to receive packing and a packing gland and having holes to receive through bolts for said gland, a tubular member on the other pipe section and slidably disposed in said casing, an annular head on said tubular member, a guide element secured to said casing and extending over and in encircling slidable engagement with said head; said guide element thereby providing support for the joint, packing, and a packing gland in said casing, said gland lying within said guide element, and gland bolts engaging said gland and extending through said holes in said casing, said bolts being thereby adapted to the adjustment of said gland externally of said casing and said guide element."

"7. In combination with two sections of a pipe line, a casing attached to the end of one pipe section and recessed to receive packing and a packing gland and having holes to receive through bolts for said gland, a tubular member on the other pipe section and slidably disposed in said casing, an annular head on said tubular member, a guide element secured to said casing and extending over and in encircling slidable engagement with said head; said guide element thereby providing support for the joint packing and a packing gland in said casing, said gland lying within said guide element, gland bolts engaging said gland and extending through said holes in said casing, said bolts being thereby adapted to the adjustment of said gland, externally of said casing and said guide element, and means for limiting the outward movement of the casing and tubular member relatively to one another, whereby the joint cannot be pulled apart."

The Patent Office allowed the new claims as filed without questioning them. They serve to eliminate any question of limitation of claims 1 and 2 to a precise form of guide. The reissue is believed to come within the principle of Abercrombie & Fitch Co. v. Baldwin, 245 U. S. 198, 38 Sup. Ct. 104, 62 L. Ed. 240. There the specifications, as here, were amended by bringing out the function of one of the important parts of the combination, and it was held proper to amend the claims so as to explicitly describe the embodiment and doing so was not an enlargement of the patent as originally filed. Defendants however contend that in that case the reissue patent was not broadened by the reissue, and that notice of the claim of infringement was given defendant before the reissue was applied for.

In answer it suffices to repeat that I do not think the reissue enlarged the scope of the original claims, when it is considered with the specification and drawings describing the invention and limited to a guide sleeve that is bolted to the flange 11 for making a sliding joint. Defendants apparently fail to analyze that the purpose of the patentee's arrangement of the guide, regardless of whether it was provided with openings or not, was to get quick access to the packing gland. The original patent, in view of the description, was one of merit, and would have had, as the reissue has, the right to invoke the rule of equivalents.

The defense of intervening rights is mainly predicated upon the defense of limitation of the claims in controversy to an imperforate guide or support for the joint, and it is also argued that, since the original Bogart patent was not issued until October, 1919, after defendants had been making expansion joints for more than four years, and because defendants were not notified of their infringement, no infringement being charged until after the reissue, they should, in the absence of fraud, be excused for their conduct. This defense, however, is thought to fail, in view of the evidence that defendant Ross, managing officer of the Ross Heater & Manufacturing Company, was aware of the Bogart invention, having obtained his knowledge in relation thereto in 1913, and afterwards, while he and the patentee were in the employ of the present owner of the patent in suit, or an associate company at Buffalo, and after acquiring such knowledge, imparted it to Ruppel whose application for patent was then pending. The Patent Office tribunals, as heretofore pointed out, decided that Ruppel first learned of the idea incorporated in the invention from the drawings of Bogart's form of joint and that Ruppel's expansion joint was not a disclosure of Bogart's. The evidence shows that the defendant company afterwards manufactured the joint adapting thereto a removable cylindrical guide sleeve, with openings or slots, and also the means for adjusting the packing from the outside of the flange, and for loosening or dissembling the parts without disconnecting the joint features that are clearly not present in the early disclosure of Ruppel, but which were the main feature of the Bogart invention, to which its success is attributable. The authorities submitted by defendants on estoppel and intervening rights do not encompass proofs of the character herein disclosed, and therefore they do not apply. See Coffield Washer Co. v. A. D. Howe Machine Co. (C. C.) 190 Fed. 42. The defense in this relation, therefore, is not sustained.

Nothing anticipatory is found in the antecedent art requiring invalidity of the claims. Neither the Witzenmann, Wyton, Burnham, nor Opitz patents disclose or suggest the Bogart combination and arrangement of the various elements, old separately though they may be. There were, of course, many kinds of packing glands or stuffing boxes for various kinds of machines or devices; there were known old packing glands in pipes and in connection with unguided joints having at some point ordinary bolts or through-bolts and nuts and stops, but no one before Bogart arranged the bolts and through-bolts in combination with the packing gland within the guide sleeve in such a way as to obtain ready access thereto; nor do any of the prior structures show an arrangement of the bolts and nuts, so that they could be quickly loosened from the outside of the guide sleeve, enabling the gland to readjust the packing without removing the sleeve, and while, as the specification states, "the parts are held by the guide sleeve in perfect alignment." In Ruppel's open guiding member or sleeve there was a good attempt to overcoming the objections to the old slip joint, but it did not succeed. Bogart perceived wherein and why it failed, and he conceived the idea and means for practicability and success. The Wyton and Burnham patents do not show the combination, and were open

either to the objection of leaking or of difficult adjustment of the packing, and in the Burnham patent, wherein is described an unguided sleeve, no provision is made for rearranging the packing on the slip tube. The model supplied by defendants of the British patent to Opitz would at first blush cause one to think that its closeness as to some parts to the Bogart construction is such that changes and modifications to achieve the same result could be made by the skilled mechanic and without drawing upon the genius of an inventor. The fact, however, is that its cradle or cylindrical support is not a guide sleeve secured to the casing. It has a guide consisting of two parallel projecting arms, but they do not constitute a protective chamber. Although the Opitz construction appears to have a packing in the casing and a gland, the drawing is indefinite as to the use of bolts in connection with part *b–2* (the packing gland), and indeed no bolts are shown for outside accessibility to adjust the packing. The guide does not, in my opinion, perform the same function that is performed by Bogart, namely, the protection of the sliding movement of the tube. The indefiniteness as to details of construction and operation prevents considering it as an anticipation.

It is unnecessary to refer in detail (additional to what has been said) to the evidence before the Patent Office relating to prior invention, or that Ruppel's earlier application was for a different construction. No new evidence has been submitted before me on the question of prior invention by Bogart, except that Ruppel testified that he disclosed to Bogart the expansion joint construction installed at the Brooklyn Hospital, which is claimed to have embodied Ruppel's invention as described in the second application; but Bogart in rebuttal denied this assertion, and, there being no affirmative corroboration, I must decline to rule that Bogart was not the original inventor of the expansion joint in question. The evidence preponderantly shows that Bogart was the first to adapt a separable or removable cylindrical sleeve, connected to the casing for external adjustment of the packing gland, for Ruppel's integral open sleeve to give access to the bolts and nuts inside the guide. In view of the foregoing interpretation of the reissue patent, infringement by defendant's expansion joint as to most of the claims involved is undoubted. Indeed, infringement is practically conceded by the expert witness for defendant as to claim 6 of the reissue, though he thinks that to include as an element the through-bolts for the gland was an old adaptation in the art. It is my view, however, that their inclusion in connection with the removable guide produced a new and useful result.

Claims 1, 2, 4, and 5, as said, are not strictly limited to an absolutely closed sleeve construction, and I think an open or perforate guide, if bolted to separate flanges to secure a sliding joint or removable guide, comes within the reasonable intendment of the claims. Defendants, in their construction, embody a separable and removable guide sleeve by bolting it with stud bolts to a flange at one end and extending it to a flange at the opposite end, and therefore they infringe the above-enumerated claims.

The fifth claim is limited to a combination of elements, including the guide sleeve and offsets bored to receive the gland bolts. Defendants, in their adaptation, do not use offsets and through-bolts, but by their

use of stud bolts through the flange to the gland inside the guide they substantially attain the same result as in Bogart's patent.

The seventh claim has as an element stops for limiting the outer movements of the casing and tube member; but as the evidence regarding the discovery of such feature by Bogart lacks certitude, and as it appears to have been disclosed in Ruppel's second application, I conclude this claim is not infringed by defendants' construction.

[2] As to the counterclaim: Both claims 1 and 2 of defendants' patent were added after termination of the interference proceeding, on the theory that Ruppel originated the generic idea of the rounded guide arrangement of the joint with end flanges of the pipe and the flange of the tubular member, so as to form a piston guide. These claims, as contended by counsel for complainant, must be viewed in the light of the abandoned application, since, if not so considered, they are void for enlargement of the invention. The abandoned application is to be treated as a continuance of the first. I shall assume that Ruppel's first application did not, because of mistake or inadvertence, set forth the entire invention as he conceived it. In this conclusion I might add that there is no satisfactory evidence to show prior use for more than two years before the second application. The right to the second application derived from the first I hold includes both open and closed forms of guide sleeve; but claims 1 and 2, which include a cylindrical member in its relation to the head of the tubular member, are limited to what is shown in the original application. They cannot be interpreted to cover a separable or removable guide sleeve and its flange arrangement to form a protected chamber. The protected chamber of the Bogart patent achieved a different result, and is caused to function in a different way. The Wyton patent and the details of construction there shown preclude any broad claims for the Ruppel conception. An expansion joint of the slip tube type is there provided, with an annular guide or sleeve and a guide flange, in conjunction with a tubular member in the casing slidably disposed therein, and a cylindrical member extending from the casing over and into intimate engagement with the head, to guide and support the tube member in axial alignment with the casing. Wyton's cylindrical member bears the same relation to the flange or head as does the open guide sleeve of defendants' patent. Claim 2 of defendants' patent specifies a packed joint in one end of the casing. Wyton shows a stuffing box and in the Tyler patent is specified a stuffing box and gland, the only difference in the arrangement from defendants' device being that the guide member is not a complete sleeve. In the Pearce patent is also shown a gland and a guide member; here the latter being in the form of a short sleeve. These prior disclosures, though not precisely the same as to the details of construction of defendants' guide sleeve, nevertheless warrant the holding that the changes made by which a so-called housing chamber resulted were merely a carrying forward of an old idea without in that particular relation contributing any result not attained by the prior structures in the art.

My conclusion on the whole case is that the defendants, Ross Heater & Manufacturing Company, Inc., and Scott C. Ross, have appropriated

in their expansion joint the combination of the Bogart patent in suit, as specified in claims 1, 2, 4, 5, and 6, and that the complainant company does not infringe claims 1 and 2 of defendants' patent.

A decree may be entered accordingly in favor of the complainant, with costs.